GARRISON, Judge.
The plaintiffs, Elka and Stanley Diefen-thal, Beatrice and Hughes de la Vergne, Paul Leaman, Jr., Dotty and Max Nathan, Jr., Carole Pettit, Gretchen and John Elms, Stephany and William Monteleone and Margaret and Dr. Philip Loria, filed a petition for injunctive relief, declaratory relief and damages against Longue Vue Management Corporation, Longue Vue Foundation and Longue Vue House and Gardens Advisory Corporation. In that petition, the plaintiffs requested the enforcement of a 1977 settlement agreement between the plaintiffs and the defendants or their predecessors in interest.
The plaintiffs are the residents of Garden Lane in New Orleans. Defendant, Longue Vue Foundation, is the owner of Longue Vue House and Gardens which was bequeathed to the Foundation by the late Mrs. Edith Stern who died in 1980. Defendant, Longue Vue House and Gardens Advisory Corporation, is the operator of the house and gardens and Longue Vue Management Corporation was the predecessor of that corporation.
In 1931, the owners of the property on Garden Lane, including Mr. and Mrs. Edgar Stern, the owners at the time of the property now known as Longue Vue House and Gardens, entered into a restrictive covenant in which they agreed that the property owned by the parties to the covenant and their successors in interest would be used only for residential purposes and not for business or commercial purposes of any description. In 1973, all of the residents of Garden Lane except Mrs. Stern filed suit against Mrs. Stern based on alleged violations of the 1931 restrictive covenant. On April 18, 1977, the parties to the 1973 litigation entered into a settlement agreement which represented a compromise regarding Mrs. Stern’s property and the use of Garden Lane. The 1977 agreement allowed all of Mrs. Stern’s property to be opened to the public but restricted access to Garden Lane so as to preserve its private character.
The residents of Garden Lane filed this lawsuit in 1988 alleging violations of the 1977 agreement by the defendants. The provision of the 1977 agreement which is at issue and which the plaintiffs are now seeking to enforce is as follows:
“The restriction against use of any property situated or abutting on Garden Lane for any purpose other than for a private residence, as provided in the aforesaid Act before Watts K. Leverich, Notary Public, dated 16, December 1931, shall be relaxed as to the property owned by Mrs. Stern in the following respects only:
a. Longue Vue Gardens may be opened to the public and a charge may be made for admission thereto.
b. The “Main House”, which is presently being used by Mrs. Stern as a private residence, and outbuildings may be used as a museum and a charge may be made for admission thereto.”
c. The “Playhouse” may be used for private or semi-private meetings of non *1222 profit groups of which Mrs. Stern is a member or sponsor or in which she is an active participant and also for such meetings under the sponsorship of Longue Yue Gardens or Museum. The number of such meetings held at night shall not • exceed three (3) in any one week.”
The petition in this case alleges that the defendants breached the 1977 agreement by allowing large private functions to be held at the Playhouse and on the accompanying grounds which were not held for “nonprofit groups” under the “sponsorship” of the Foundation and could not be construed as “meetings” under the 1977 agreement. Furthermore, the plaintiffs allege that these functions create a nuisance causing irreparable injury to them.
Following trial in this case, the trial judge issued a declaratory judgment stating as follows: •
“The restrictive covenant executed on February 16, 1931, as amended on April 18, 1977, is to be interpreted as follows:
1) The “playhouse” may only be used for meetings of the Longue Vue Management Corporation, Longue Vue Foundation, Longue Vue House and Gardens Advisory Corporation or of any group under its sponsorship such as Friends of Longue Vue for night meetings after 7:00 P.M. and then not to exceed three such meetings in any such week;
2) The “main house” and outbuildings may be used as a museum only between the hours of 8:00 A.M. and 6:00 P.M.;
3) Longue Vue Gardens may be opened to the public between the hours of 8:00 A.M. through 6:00 P.M.
4) The term “museum” does not include the concept of serving hot meals irrespective of whether the hot meals are prepared on premises or by outside caterers and then bussed in;
5) The operation of the gardens and museum does not include permitting bands or small groups of musicians other than strings such as violinists, harpists or pianists;
6) The placing of portalets or temporary restroom facilities on the premises are prohibited except in those instances when construction work is being performed or in cases of emergency caused by other than the act of defendants in permitting a large number of people to be present on the premises at any one time;
Accordingly,
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that an injunction issue herein directed to the Lon-gue Vue Management Corporation, Lon-gue Vue Foundation and Longue Vue House and Gardens Advisory Corporation, restraining, enjoining and prohibiting each of the corporations, each of their agents, employees and all persons, firms or corporations acting or claiming to act on their behalf or in concert with them from operating and managing Lon-gue Vue House and Gardens except in accordance with the provisions of this declaratory judgment, other applicable laws and regulations not in conflict with this judgment and subject to further orders of this Court.”
The defendants now appeal the judgment of the trial court. On appeal, the defendants/appellants argue that the trial judge erred in failing to strictly construe the 1931 and 1977 restrictive covenants as required by Louisiana law. See Oakbrook Civic Association, Inc. v. Sonnier, 481 So.2d 1008 (La.1986). According to appellants, the 1931 agreement merely required that the properties on Garden Lane be used only for residential purposes and that the agreement did not bar any of the residents from holding parties on their properties. Appellants further stress that, by its own wording, the 1977 agreement relaxes the restrictions of the 1931 agreement pertaining to the use of the Stern’s property so as to allow the house and gardens to be opened to the public and a charge made for admission thereto. ■
Because the 1977 agreement does not specifically contain restrictions as to Lon-gue Vue’s hours of operation or as to food, beverages and entertainment being provided to the public, appellants claim that the trial judge overstepped his authority in interpreting the 1977 agreement to place restrictions on these items. The appellants *1223 claim that parties held at the “Playhouse” are essentially meetings and that Longue Vue assumes responsibility for groups holding special events on its property; therefore, Longue Vue is in compliance with the provision of the 1977 agreement which states that the “Playhouse” may be used for private or semi-private meetings of nonprofit groups under the sponsorship of Longue Vue Gardens or Museum.
Furthermore, appellants argue that parol evidence should not have been admitted to aid in the interpretation of the 1977 agreement and that any doubt as to the meaning of that agreement should have been resolved in favor of the unrestricted use of the property by Longue Vue. Finally, Lon-gue Vue argues that the 1977 agreement allowed for its house and gardens to be opened to the general public as a museum and that it has done this by permitting groups or individuals to gain admission to the property by payment of a fee to Lon-gue Vue and by permitting them to have food, beverages and entertainment in conjunction with their tour of the house and gardens. The fee charged for private functions held at Longue Vue includes a fee for each guest for admission to the museum and a fee for the exclusive use of the Longue Vue property. The appellants suggest that because museums throughout the country allow private parties with food, beverages and entertainment, Longue Vue House and Garden should be allowed to do so as well. This argument is also made in amicus briefs filed on behalf of the Greater New Orleans Tourist and Convention Commission and the City of New Orleans.
On appeal, this court must decide whether or not the trial court judgment is manifestly erroneous. It should first be noted that Longue Vue’s argument that private functions should be allowed on its property because museums throughout the City of New Orleans and elsewhere in the country allow similar activities is irrelevant in this case. The outcome of this lawsuit must be determined by the 1931 and 1977 restrictive covenants and not by the activities of other museums.
Louisiana law requires that restrictive covenants be strictly construed. Clark v. Manuel, 463 So.2d 1276 (La.1985); Oakbrook Civic Association v. Sonnier, supra. The trial judge’s interpretation of the 1977 agreement is not a strict construction of that agreement. To the contrary, the trial judge completely redrafted that agreement by redefining existing provisions and creating new provisions altogether. Clearly, the trial judge overstepped his authority in doing so and, therefore, the trial court judgment must be set aside.
In deciding whether or not the objectionable activities held at Longue Vue are prohibited, this court must determine whether the activities are proscribed by the wording of the 1931 and 1977 agreements between the parties or their predecessors in interest. It is clear that the 1931 agreement mandated that the property owned by the parties to the agreement and their successors in interest could be used only for residential purposes and not for business or commercial purposes.
The portion of the 1977 agreement which is at issue in this case specifically states that it relaxes the restrictions of the 1931 agreement by allowing Longue Vue House and Gardens to be opened to the public and for a charge to be made for admission thereto. The agreement also specifies the frequency and type of meetings which may be held in the building on the Longue Vue property known as the “Playhouse”.
Subparts (a) and (b) of the above-stated provision of the 1977 agreement state that Longue Vue Gardens, the “Main House” and the outbuildings may be used as a museum and a charge may be made for admission thereto. However, Subpart (c) of the provision describes in detail the activities allowed in the “Playhouse” building. Once again, that section states:
■ “... C. The ‘Playhouse’ may be used for private or semi-private meetings of nonprofit groups of which Mrs. Stern is a member or sponsor or in which she is an active participant and also for such meetings under the sponsorship of Longue Vue Gardens or Museum. The number *1224 of such meetings held at night shall not exceed three (3) in any one week.”
Appellants argue that the “Playhouse” is one of the outbuildings referred to in sub-part (b) of this provision and, therefore, should not be subject to any greater restrictions than the gardens, main house and other outbuildings. They also argue that subpart (c) merely defines additional uses allowable for the “Playhouse” building.
We do not agree with the appellants’ interpretation of subpart (c). Rather, the specificity with which that subpart lists activities allowed in the “Playhouse” leads us to the conclusion that subpart (c) defines the exclusive uses of the “Playhouse” building. Therefore, any activities not listed in that subpart, including private parties, are prohibited in the “Playhouse” building.
Furthermore, we reject appellants’ • argument that parties held in the Playhouse are essentially meetings and, therefore, are allowable under the 1977 agreement. We find that the term “meetings” as used in subpart (c) clearly does not encompass large late-night parties complete with food, alcoholic beverages and live entertainment. Longue Vue may continue to allow meetings in the “Playhouse” but only as clearly defined in subpart (c) of the provision at issue in the 1977 agreement.
Although we find that the “Playhouse” provision defines the exclusive uses permitted for that building, we also find that that provision has no application to any other part of the Longue Vue property. LSA-C.C. art. 783 provides that any doubt as to the existence, validity or extent of building restrictions must be resolved in favor of the unrestricted use of the property-
Subparts (a) and (b) of the provisions at issue in the 1977 agreement only state that the gardens, main house and outbuildings may be opened as a museum and that an admission fee may be charged. Because these provisions do not detail permitted .or prohibited activities for these areas, LSA-C.C. art. 783 mandates the finding that Longue Vue is not prohibited from allowing private parties to be held in areas other than the “Playhouse” as stated above.
In the second part of this appeal, the appellants argue for the first time that plaintiffs’ action against Longue Vue prescribed many years ago. Specifically, the appellants allege that plaintiffs’ action to enjoin alleged violations of the restrictive covenant prescribed two years after the commencement of a noticeable violation. Appellants argue that because parties were held at Longue Vue as early as 1979, the plaintiffs’ action prescribed in 1981.
Although an exception of prescription may be filed for the first time on appeal according to LSA-C.C.P. art 927, the record in this case is not fully developed as to the issue of prescription. Therefore, we refuse to consider the exception of prescription at this time.
Thus, for the reasons stated above, the trial court judgment is set aside and the injunction issued by the trial judge on August 24, 1988 is dissolved. The following declaratory judgment is rendered by this court: The provision at issue in the restrictive covenant of April 18, 1977, amending the restrictive covenant of February 16, 1931, is to be interpreted as follows:
1) The appellants are not prohibited from allowing groups or individuals to provide their members or guests with food, beverages and entertainment on the grounds and buildings other than the “Playhouse” in conjunction with tours of the museum and gardens.
2) The activities allowed in the “Playhouse” are confined to meetings as further specifically defined in subpart (c) of the provision at issue in the 1977 agreement.
Furthermore, a permanent injunction is hereby issued restraining and enjoining the appellants from operating and managing Longue Vue House and Gardens except in accordance with the provisions of this declaratory judgment.
TRIAL COURT JUDGMENT SET ASIDE; DECLARATORY JUDGMENT *1225 RENDERED; PERMANENT INJUNCTION ISSUED.