PLOTKIN, Judge.
The plaintiffs, Lake Terrace Property Owners Association and members of the association, Edga Verges, wife of and Edward J. McNamara and Peggy Farrar, wife of and Manuel Saavedra, seek to enjoin the City of New Orleans from selling a public walkway in their subdivision. The plaintiffs appeal the trial court’s denial of their petition for injunctive relief. We reverse the trial court’s ruling and enjoin the sale of the disputed walkway.
FACTS
Lake Terrace is a subdivision created by the Board of Levee Commissioners of the Orleans Levee District, bounded by Lake Pontchartrain on the north, London Avenue Canal on the east, Robert E. Lee Boulevard on the south, and Bayou St. John on the west. On August 10, 1953, the Levee Board confected building restrictions and a subdivision plat, which were recorded prior to the first sales of the subdivision lots. Section IX of the building restrictions provided for electrical transformer vaults and 12-foot “easements” to allow access for New Orleans Public Service, Inc. to perform necessary maintenance. Additionally, this section refers to the public walks in certain squares, one of which is in the disputed Square # 33.
Section IX provides in pertinent part:
To serve sites in Lake Terrace Subdivision with an electrical underground system, Transformer Vaults will be erected in the interior of certain Squares as indicated on the map of Lake Terrace, File No. 2913.
These vaults will be constructed of brick and concrete. They will have a base of approximately 16 feet 4 inches square and a height of 8 feet.
To provide access to these vaults for maintenance purposes, 12 foot easements will be provided for the use of the New Orleans Public Service Inc., as indicated on the map of Lake Terrace. The areas on which these easements and transformers rest will be owned by the Orleans Levee Board, except in squares No. 6, 27, 32 and 33, where public walks are provided to conform to the regulations of the City Planning and Zoning Commission, in which case the walks will be widened to 12 feet to permit their use by the New Orleans Public Service Inc. In this case, the easements are public property and will be dedicated to the City of New Orleans.... (Emphasis added.)
On February 22, 1957, the Levee Board executed an Official Act of Dedication transferring and dedicating to the City all rights to the walkways in Lake Terrace *113 Subdivision. The pertinent language provides in part:
[T]he Board of Levee Commissioners of the Orleans Levee District does hereby transfer, assign, set over, give, grant and dedicate to and in favor of the City of New Orleans and its inhabitants ... [a]ll of the streets and walkways in Lake Terrace Subdivision.
The Act of Dedication then describes the dedicated walkways, including the disputed walkway in this case, located in Square #33.
On March 12, 1981, the City declared in Ordinance 8116, which was introduced by request, that the crosswalk in Square # 33 was no longer needed for public use, and thereby authorized the sale at public auction of the disputed walkway. Section 4 of the Ordinance provided that the building restrictions for the Lake Terrace Subdivision were to be made a part of any sale and that the property would be maintained as a walkway as long as the title restrictions so required. Section 8 of the Ordinance provides that the property would be subject to the retention of a full-width servitude for public utilities.
On October 29, 1987, James W. Kirkland, acting director of the Department of Property management for the City of New Orleans, declared that pursuant to Ordinance 8116 he would offer for sale at public auction and sell to the highest bidder, for cash, certain parcels of land, one of which was a crosswalk in Square # 33 of Lake Terrace Subdivision.
Prior to the sale, the plaintiffs filed a petition for a temporary restraining order and a rule for a preliminary injunction seeking to enjoin the sale by the City of New Orleans. The plaintiffs alleged that the City did not have clear title to the walkway and thus could not offer the property for sale at publie auction. The City as defendant opposed the injunction. Additionally, Mary Elizabeth Easterling, owner of property adjacent to the walkway in question, intervened seeking dissolution of the restraining order.
The trial court granted a temporary restraining order in favor of the plaintiffs on November 18, 1987. Subsequently, at the injunction hearing, the trial court denied the plaintiffs’ petition for a preliminary injunction, and assessed costs against the plaintiffs.
OWNERSHIP OF THE WALKWAY IN SQUARE # 33
The plaintiffs contend that the City of New Orleans is not the owner of the property in question, having only been granted a servitude over the land by the Levee Board. They argue that the City cannot sell what it does not own, and assert that the City abandoned the right-of-use servitude when it declared that the walkway was no longer needed for public use. The issue before this court is whether the Act of Dedication of 1957 gave the City full ownership which would allow for the proposed sale at public auction.
We agree with the trial court’s holding that the Act of Dedication transferred perfect ownership to the City. LSA-R.S. 33:5051 sets forth the method for a statutory dedication of real property. The statute outlines the procedure that a real estate owner-developer must follow before he subdivides land for sale. One of the specifications that must be included is the formal dedication to public use of all the streets, alleys, and publie squares on the map.
The Act of Dedication of February 22, 1957 met the statutory requirement of LSA-R.S. 33:5051. Although the statute indicates that this formal dedication should have been filed when the original plats were recorded, complete and detailed compliance with the statute is not required. Louisiana courts have held that substantial compliance will suffice. Garrett v. Pioneer Production Corporation, 390 So.2d 851 (La.1980). The plats were filed before the first lot sale, and contain numbered squares and their dimensions, the names of the streets and their widths and the name and number of squares dedicated to public use, all in compliance with the statute. We find substantial compliance with the statute.
*114 Furthermore, none of the parties dispute that the dedication was made. The plaintiffs, however, argue that this dedication simply conferred a servitude to the City rather than perfect ownership which would allow the resale of the land. In Garrett v. Pioneer Production Corporation, supra, the Louisiana Supreme Court held that a statutory dedication vests full ownership in the municipality, parish, or state of Louisiana, depending upon where the street or road is located. Because we find that a statutory dedication did in fact occur, the City of New Orleans possesses perfect ownership of the walkway in Square # 33. PUBLIC USE
The plaintiffs contend that even if the City owns the disputed walkway, because the walkway is dedicated to public use the City may not convert it to private use. Additionally, the plaintiffs argue that the building restrictions created an irrevocable dedication of the walkway to public use and guaranteed that it would remain in public use. These two arguments are distinct and highlight the legal dilemma in this case. Each point will be addressed separately.
A. Right of the City of New Orleans to revoke the dedication to public use
Public things are inalienable for as long as they are subject to, or needed for, public use. The inalienability of all public things, whether belonging to the state or its political subdivisions, is guaranteed by the Civil Code. Yiannopoulos, Louisiana Civil Law Treatises, Property, Volume II (1980), Section 34, p. 95. The initial inquiry in this case is whether the City has the authority to declare that public property is no longer needed for public use for the specific purpose of alienating that property-
This question has been addressed by the Louisiana Supreme Court in Coliseum Square Association v. City of New Orleans, 538 So.2d 222, republished on reh’g, 544 So.2d 351 (La.1989). The court considered whether the City had the legal authority to lease a public street to Trinity Episcopal Church, after a finding that the property was no longer needed for public purposes. In its original opinion, the court held that the City could not declare 2100 block of Chestnut Street no longer needed for public use. However, on rehearing, the court found that the City was within its authority to make such a declaration, as long as the decision was not arbitrary or capricious.
The Louisiana Supreme Court opined:
La. Const, art. VI, Section 5(E) provides that a home rule charter “may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with the constitution.” There is no general law which prohibits a home rule entity from closing a public street and alienating it for a private purpose. Neither is there a constitutional prohibition. Neither the Civil Code nor the Constitution, therefore, prohibits the city from alienating a public street; in fact, specific authority to sell, lease, exchange or otherwise dispose of public property is authorized by both the home rule charter of New Orleans and the legislative statutes.
Coliseum Square Association, at 358-59. As the Court indicated, Section 3-112(5)(dj of the home rule charter allows the New Orleans City Council to alienate immovable property, while LSA-R.S. 33:4712(A) grants a municipality the authority to sell or lease public property, which the governing authority finds no longer needed for public use.
We believe that Coliseum Square Association provides guidance on the issue of the City’s authority to alienate property that was once in public use after declaring it no longer needed for public use. Thus, the City was not constitutionally prohibited from alienating the disputed walkway simply on the grounds that it was at one time dedicated to public use.
However, Coliseum Square Association is distinguishable on two points. First, in Coliseum Square Association the City Council held full hearings and conducted impact studies to determine whether the *115 property was no longer needed for public use. In the instant case, the evidence indicates that the City did not hold an inquiry.
The second point that distinguishes Coliseum Square Association from the case before this court is that there were no building restrictions to provide competing title rights. The Coliseum Square Association could not refer to recorded building restrictions to show a property right in the street that was being leased by the City. Therefore, the City’s authority to alienate property that was already public was the only issue to be considered by the Court.
In the case at bar, we must consider not only the City’s authority to sell but the competing rights of all subdivision property owners who possess, as a result of their titles, the real rights provided in the building restrictions. The addition of title restrictions to the equation creates a different fact scenario from Coliseum Square Association. This real right conflict will be fully explored in our analysis of the legal effect of building restrictions that follows.
B. Building restrictions
The building restrictions create a separate legal question. As the plaintiffs argue, Section IX of the building restrictions clearly indicates that in certain squares in the subdivision, including Square # 33, public walkways are provided. Section IX refers to the Levee Board’s ownership of the land on which the electrical transformers rest but carves out an unambiguous exception when it provides that in squares No. 6, 27, 32, and 33 public walks are provided to conform to the regulations of the City Planning and Zoning Commission.
Building restrictions are charges on immovable property imposed “in pursuance of a general plan governing building standards, specific uses, and improvements.” La.C.C. art. 775. Professor Yiannopoulos, in Louisiana Civil Law Treatises, Predial Servitudes, Volume IV, Sections 191-200, pages 501-520, analyzes the body of law which has developed around building restrictions. As he explains, landowners and developers of land have, since the turn of the century, imposed restrictions limiting the use of lands to certain specified purposes. Louisiana courts have dealt with “building restrictions” as sui generis real rights, distinct and distinguishable from predial servitudes. Id. at 501. La.C.C. art. 777 codifies the jurisprudence in characterizing building restrictions as incorporeal immovables and real rights likened to pred-ial servitudes. Id. at 502.
To be effective against third parties, the building restrictions must be recorded, not necessarily in each act of title transfer, as long as they are recorded before the first sale. Id. at 507. When someone acquires immovable property burdened with recorded restrictions, the acquirer is bound by them. Id.
The restrictions may be enforced by mandatory and prohibitory injunctions without regard to the limitations of La.C.C.P. art. 3601. La.C.C. art. 779. Thus, injunctive relief can be granted despite the lack of the ordinary prerequisites to injunctive relief, proof of irreparable loss, injury or damage to the landowner.
Louisiana law requires the strict construction of restrictive covenants. Diefenthal v. Longue Vue Management, 550 So.2d 1220 (La.App. 4 Cir.1989), citing Clark v. Manuel, 463 So.2d 1276 (La.1985). The Louisiana Supreme Court examined the law on building restrictions in Oakbrook Civic Assn. v. Sonnier, 481 So.2d 1008 (La.1986). The court stated that the law is clear that building restrictions constitute real rights, not personal to the vendor, they inure to the benefit of all grantees under a general plan of development, and they are real rights riding with the land. In the case at bar, as in Oakbrook Civic Assn., the building restrictions constitute a general plan of development that was properly filed in the public records.
Characterization of the building restrictions as real rights enforceable through injunctive relief creates the legal dilemma present in the instant case. The City owns the property in question, having acquired full ownership by the Act of Dedication. The Louisiana Supreme Court has held that the City has the authority to *116 declare public property no longer needed for public use for the purpose of selling the property as long as the decision is not arbitrary and capricious. However, the building restrictions are competing real rights, with Section IX of those restrictions specifying that certain crosswalks will be public walkways.
A detailed analysis of the facts reveals that all parties to the action acknowledge that the building restrictions must remain in force, unless the subdivision property owners vote to remove them, whether or not the disputed property is sold. The plaintiffs, of course, argue the applicability of the restrictions as the basis for their lawsuit. At the trial court they presented affidavits attesting to use of the crosswalk as a public walkway.
Additionally, the intervenor does not dispute that the sale of the walkway cannot override any title rights in the building restrictions. She acknowledges in her brief that “the ordinance specifically recognizes the restrictions and insures that they will not be violated.”
The City as defendant in the case indicates in Section 4 of Ordinance 8116, where it authorizes the walkway for sale, that the building restrictions will remain in force as long as the title restrictions require it. Thus, the City, too, acknowledges the competing rights contained in the building restrictions.
Yet, in Section 1 of the ordinance, the City declares that Crosswalk in Square # 33 is “no longer needed for public use.” However, the mere fact that the City declared in Ordinance 8116 that the crosswalk in Square # 33 was no longer needed for public use does not serve to negate the building restrictions that require the disputed walkway to be a public walkway. The City clearly indicates that the building restrictions are enforceable when in Section 4 the City attaches them to the ordinance and makes them a part of the ordinance. The City’s acknowledgment of the building restrictions that flow with the property precludes the sale of the disputed property. If something is public it cannot be alienated or appropriated for private use. Gulf Oil Corporation v. State Mineral Board, republished on reh’g 317 So.2d 576 (La.1974).[1]
We find that the building restrictions require that the crosswalk remain a public walkway. We come to this conclusion based on the clear language of Section IX of the restrictions, and the fact that there is no dispute to the continuing applicability of the building restrictions in Ordinance 8116. The concept of real rights incorporated into the law on building restrictions cause these rights to be favored over the City’s ability to alienate property.
The body of law that has developed regarding the nature of building restrictions clearly indicates that the restrictions should remain in force unless and until the property owners decide to rescind them. The City may own certain property in the subdivision but it may not arbitrarily convert property that the building restrictions indicate is public, to private ownership.
If at a full hearing the subdivision property owners decide to remove that portion of Section IX of the building restrictions that required the crosswalk in Square # 33 to be a public walkway, the City would then be free to sell the walkway to private owners. However, since the record does not indicate that all property owners voted to remove that restriction, the injunction against the proposed sale should have been granted. We, therefore, reverse the trial court and grant the preliminary injunction sought by the plaintiffs. All costs are assessed against the appellee.
REVERSED.

. A collateral issue, the meaning of "public use", is raised by the intervenor. Although she contends that the restrictions will apply, Ms. Easter-ling mistakenly feels that she can limit access to a public walkway only to property owners. This conclusion is faulty because it fails to adhere to the clear language of Section IX which indicates certain squares will contain “public walkways.” Because the issue is not clearly before this court, we pretermit a discussion of whether a public walkway could in any case have restricted access.