567 So.2d 69 (1990)
LAKE TERRACE PROPERTY OWNERS ASSOCIATION, Edga Verges, Wife of/and Edward J. McNamara and Peggy Farrar, Wife of/and Manuel Saavedra
v.
CITY OF NEW ORLEANS.
No. 90-C-0620.
Supreme Court of Louisiana.
September 6, 1990.
*71 Jay Kern, Tracy Bishop, Simon, Peragine, Smith & Redfearn, A.J. LaNasa, George R. Simno, III, and Charles Cabibi, New Orleans, for Lake Terrace Property Owners Ass'n, Edga Verges, wife of/and Edward J. McNamara and Peggy Farrar, wife of/and Manuel Saavedra, plaintiff-respondent.
Okla Jones, II, City Atty., William D. Aaron, Jr., Chief Deputy City Atty., and Ronald J. Pursell, Asst. City Atty., for City of New Orleans, defendant-applicant.
Regel L. Bisso and Robert G. Miller, Jr., Hulse, Nelson & Wanek, New Orleans for Mary Catherine and Mickey Easterling, third party applicant defendant-applicant.
MARCUS, Justice.[*]
The primary issues presented for our review are whether the Council of the City of New Orleans has the legal authority to alienate certain immovable property that is burdened with building restrictions requiring that the property be used as a public walkway, and, if so, whether the council's decision to sell the walkway because it was no longer needed for public purposes was arbitrary and capricious.
Lake Terrace is a subdivision developed by the Board of Levee Commissioners of the Orleans Parish Levee District, the original owner of the property. Its boundaries are Lake Pontchartrain, the London Avenue Canal, Robert E. Lee Boulevard, and Bayou St. John. At the board's direction, the property was surveyed and subdivided, and a map of the subdivision was executed. The board also established building restrictions to govern use of the subdivision property according to the general plan of development. Both the map and the building restrictions were filed for registry in the office of conveyances for the Parish of Orleans prior to the first sale of subdivision property by the board. Section IX of the building restrictions provides that servitudes of passage at the designated locations on the map are granted in favor of the New Orleans Public Service, Inc. for the purpose of maintaining electrical transformers. It further provides that in certain squares, including Square 33 at issue in the instant case, public walks will be established which will be dedicated to the City of New Orleans. The restrictions provide in pertinent part:
To provide access to these vaults for maintenance purposes, 12 foot easements will be provided for the use of the New Orleans Public Service, Inc. as indicated on the Map of Lake Terrace. The areas on which these easements and transformers rest will be owned by the Orleans Levee Board, except in Squares Nos. 6, 27, 32 and 33, where public walks are provided to conform to the regulations of the City Planning and Zoning Commission, in which case the walks will be widened to 12 feet to permit their use by the New Orleans Public Service, Inc. In this case, the easements are public property and will be dedicated to the City of New Orleans.
The central purpose of the building restrictions establishing the "easements" is to provide a means of passage to the utility company for maintenance of the subdivision's electrical transformers. The property at issue in the instant case is a walkway located in Square 33 of the subdivision which is subject to use by both the utility company and by the public. The walkway is approximately 240 feet long, 12 feet wide, and runs from Lakeshore Drive to Oriole Street adjacent to four subdivision lots (Lots 5, 6, 13 and 14). An electrical transformer vault is located in the rear corner of Lot 14 near the midpoint of the walkway. The walkway does not continue through the subdivision.
On February 22, 1957, pursuant to a previously adopted resolution, the board *72 executed an act of dedication in authentic form in which it dedicated the streets, parks and walkways in Lake Terrace subdivision to the City of New Orleans. The act provides in pertinent part: "The Board of Levee Commissioners of the Orleans Levee District does hereby transfer, assign, set over, give, grant and dedicate to and in favor of the City of New Orleans all of the streets and walkways in Lake Terrace Subdivision...." The act of dedication contains a full description of all of the dedicated property, including in particular the walkway in Square 33. In the same act, the mayor of the City of New Orleans as authorized by the city council accepted the dedication of the streets, parks and walkways in the subdivision.
In March 1981, Councilman Hellmers introduced before the city council an ordinance declaring that the walkway in Square 33 of the Lake Terrace Subdivision was no longer needed for public use, and that it would be sold at public auction. Ordinance No. 8116 divided the walkway into three parcels. Parcel 1 is 125 feet long, 10 feet wide and is located between Lots 5 and 6. Parcels 2 and 3 are each 118 feet long, 6 feet wide and are located between Lots 13 and 14. The ordinance stated that the successful bidders must incorporate the parcels into their present property. The ordinance further expressly provided that the sale would be subject to the building restrictions which established servitudes of passage in favor of the utility company and the public. Section four of the ordinance provides: "The building restrictions for Lake Terrace Subdivision shall be attached hereto and made a part hereof. Specifically this property shall be maintained as a walkway as long as said title restrictions require so." At a meeting on May 7, 1981, the council heard the recommendations of the city planning commission, and proponents and opponents of the ordinance. The city planning commission had no objections to the sale provided that the ordinance made the sale subject to the building restrictions. After the hearing, the council unanimously adopted Ordinance No. 8116, authorizing the sale of the walkway in Square 33 of Lake Terrace Subdivision subject to the restrictions as aforesaid. The mayor then signed the ordinance on May 11, 1981.
On October 29, 1987, the acting Director of the Department of Property Management, Mr. James W. Kirkland, issued a notice that on November 23, 1987 the city would offer for sale at public auction the three parcels comprising the walkway in Square 33 of Lake Terrace Subdivision. This notice appeared in the official journal of the city, The Times-Picayune/The States-Item, on November 9, 13 and 16, 1987. However, on November 18, 1987, prior to the sale, suit was filed by the Lake Terrace Property Owners Association, Inc. and several residents of the subdivision against the City of New Orleans, seeking a temporary restraining order, and preliminary and permanent injunctions against the sale of the walkway. The trial judge granted a temporary restraining order, and fixed a date for a hearing to show cause why a preliminary injunction should not issue. Mrs. Mary Catherine Easterling, an owner of land adjacent to Parcel 1 (Lot 6), intervened in the suit and joined the city in resisting the plaintiffs' demand.[1] After a hearing, the trial judge denied plaintiffs' request for a preliminary injunction and found that the city owned the property in dispute and had legal authority to alienate the property after determining that it was no longer needed for public use. Plaintiffs appealed. The court of appeal reversed, finding that the building restrictions required that the walkway remain public and precluded the city's sale of the property.[2] Upon the application of the city and intervenor, we granted certiorari to review the correctness of that decision.[3]
*73 The first issue is whether the city has legal authority to alienate immovable property subject to building restrictions requiring that the property be used as a public walk.[4] The court of appeal found that the building restrictions required that the property remain a public walkway and therefore precluded the city's sale of the property. The city and intervenor contend that the city has legal authority to alienate the property provided that it is no longer needed for public purposes and that it remains subject to the building restrictions.
Recently in Coliseum Square Ass'n v. City of New Orleans, 544 So.2d 351 (La.1989), we held that the City of New Orleans had the legal authority to execute a long term lease of a public street that was no longer needed for public purposes. We noted therein that La. Const. art. VI § 5(E) provides that a home rule charter may include the exercise of any power necessary or proper for management of its affairs that is not inconsistent with general statutory law or the constitution. We found that there is no provision prohibiting a home rule entity from alienating a public street no longer needed for public purposes in general statutory law, the civil code or the constitution. Rather, we found specific authority for alienating public property was granted by the Home Rule Charter of the City of New Orleans and by statute. The Home Rule Charter of the City of New Orleans, Section 3-112(5)(d), empowers the city council to adopt ordinances alienating any immovable property and granting any servitude, franchise or privilege. Section 6-306(2) expressly provides:
With the prior approval of the Mayor and the City Planning Commission, the council may ordain the sale or exchange of immovable property no longer needed.... [T]he City Planning Commission may impose restrictions as to the future use of such property in order to insure that its use will be in conformity with the plans developed ... by the Commission. The Director, after fixing a minimum price, shall ... cause the property to be sold at public auction to the highest bidder for not less than the minimum price, after advertisement in the official journal....
Further the legislature granted to municipalities the legal authority to alienate public property not needed for public purposes. La.R.S. 33:4712(A).[5] In Coliseum Square Ass'n, we noted that our courts have previously recognized the authority of local governmental bodies to alienate public streets. Therefore, we concluded that in the absence of any constitutional prohibition and in view of the express authority granted by the home rule charter and La.R.S. 33:4712(A), the city council had legal authority to lease the 2100 block of Chestnut Street. This reasoning applies equally well to the alienation of a public walkway. The city council has the legal authority under the home rule charter and statute to alienate the walkway in Square 33 of the Lake Terrace Subdivision provided it determines that the property is no longer needed for public purposes.[6]
*74 The building restrictions of Lake Terrace Subdivision make the property subject to use as a public walkway, as well as a utility servitude of passage for the purpose of maintaining the electrical transformer. La.Civ.Code P. art. 775 provides: "Building restrictions are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses and improvements. The plan must be feasible and capable of being preserved." The law is clear that building restrictions are real rights inuring to the benefit of all other lots within the subdivision under the general plan of development. Oakbrook Civic Ass'n, Inc. v. Sonnier, 481 So.2d 1008, 1010 (La.1986). Building restrictions may be established only by juridical act executed by the landowner. La.Civ.Code P. art. 776. To be effective against third persons, building restrictions must be filed for registry in the public records of the parish in which the burdened immovable property is located. La.Civ.Code art. 776 comment (c); La.R.S. 9:2754; A. Yiannopoulos, Property § 193, at 507 (4 Louisiana Civil Law Treatise 1983). Proper registration of building restrictions provides constructive knowledge of their contents to all persons, making the restrictions enforceable against all prospective purchasers. Oakbrook Civic Ass'n, Inc., 481 So.2d at 1010. Once established, building restrictions may not be terminated except by agreement of the landowners, by liberative prescription or by abandonment. La.Civ.Code arts. 780-782.
Section four of Ordinance No. 8116 provides that the sale be made subject to the building restrictions, "specifically that the property shall be maintained as a walkway as long as said title restrictions require so." Further, the building restrictions imposed pursuant to the general plan were properly registered in the office of conveyances for the Parish of Orleans prior to the first sale of subdivision property by the board. While the building restrictions require that the property be maintained as a public walkway, the restrictions do not require that the city retain ownership of the property. The building restrictions do not prevent the sale and are not affected by the city's sale of the property. In making the sale subject to the building restrictions, the ordinance provides that the public will be able to use the property as a walkway after the sale. The property will remain subject to public use as a walkway unless the restrictions are terminated in accordance with law. Therefore, the building restrictions do not prevent the city's sale of the walkway in Square 33 of Lake Terrace Subdivision. The court of appeal erred in holding otherwise.
Finally, we must determine whether the city council properly exercised its legal authority in determining that the property was no longer needed for public purposes and that it should be sold. Plaintiffs contend that the city council's determination to sell the walkway because it was no longer needed for public purposes was arbitrary and capricious. They argue that the walkway is needed for public use because it is used frequently by Lake Terrace residents, as well as the general public.
In reviewing the decisions of public bodies (the city council in the instant case), the courts will not interfere with the functions of these bodies in the exercise of the discretion vested in them unless such bodies abuse this power by acting capriciously or arbitrarily. Coliseum Square Ass'n, 544 So.2d at 360. Generally, "capriciously" has been defined as a conclusion of a commission when the conclusion is announced with no substantial evidence to support it, or a conclusion contrary to substantiated *75 competent evidence. The word "arbitrary" implies a disregard of evidence or the proper weight thereof. Id.
The property at issue is a short walkway which runs from Lakeshore Drive to Oriole Street. It is approximately 240 feet long and 12 feet wide. The primary purpose of the walkway is to provide a servitude of passage to the utility company for maintenance of the electrical transformer located in the rear corner of Lot 14 near the midpoint of the walkway.[7] The walkway extends through four subdivision lots and is not continued through the subdivision. The city council held at least two public hearings on the ordinance and its possible repeal after notice had been given to the public. At the meeting on May 7, 1981, the city council considered whether to adopt the ordinance and heard the recommendations of the city planning commission as well as statements by proponents and opponents of the action. On April 6, 1988, the city council also considered an ordinance introduced by Councilwoman Peggy Wilson to repeal Ordinance No. 8116. There is some evidence that Lake Terrace residents use the walkway, according to affidavits of various residents filed by plaintiffs. At the hearing before the city council, the president of the Lake Terrace Property Owners' Association stated that the walkway is used for walking and jogging by residents and the general public. The walkway is also used by the utility company to reach the electrical transformer with its maintenance equipment. The evidence does not support a conclusion that the walkway is frequently traveled or needed by neighborhood residents for ingress and egress. It is not open to vehicular traffic and is not part of a designated bicycle route. Further, the ordinance provides that the sale will be subject to the building restrictions. Therefore, the walkway will remain open to use by the public and the utility company pursuant to the building restrictions after the sale. Under the circumstances, we find that the city council's decision to sell the property because it was no longer needed for public purposes was not arbitrary and capricious. Therefore, this court should not interfere with the city council's decision to sell the property.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. The judgment of the trial court is reinstated.
NOTES
[*] Judge Melvin A. Shortess of the First Circuit Court of Appeal participated in this decision as Associate Justice Pro Tempore.
[1] Before the trial court rendered a judgment, Councilwoman Peggy Wilson introduced an ordinance to repeal Ordinance No. 8116 which had authorized the sale of the walkway. After a hearing on April 6, 1988, the city council rejected the ordinance.
[2] 556 So.2d 111 (La.Ct.App. 4th Cir.1990).
[3] 559 So.2d 1382 (La.1990).
[4] At the outset, plaintiffs contend that the city does not own the property, but rather owns only a servitude of passage and therefore has no authority to sell the property. Plaintiffs also argue that the dedication of the property was invalid because the board's resolution and the city's ordinance authorizing the acceptance of the dedication did not refer to the walkways in Lake Terrace Subdivision. While it is questionable whether plaintiffs have standing to raise the issue of the city's ownership, the act of dedication by the board granted full ownership of the walkway to the city. The city clearly owns the property in dispute. The act of dedication executed by the board, along with the recordation of the subdivision plat, constitutes substantial compliance with the procedures for dedication of property for public use under La. R.S. 33:5051. Garret v. Pioneer Production Corp., 390 So.2d 851, 856 (La.1980); Hailey v. Panno, 472 So.2d 97, 100 (La.Ct.App. 5th Cir. 1985).
[5] La.R.S. 33:4712(A) provides:

A municipality may sell, lease for a term of up to ninety-nine years, exchange, or otherwise dispose of, to or with other political corporations of this state, or private persons, at public or private sale, any property, or portions thereof, including real property, which is, in the opinion of the governing authority, not needed for public purposes.
[6] Plaintiffs contend that even if the city has the legal authority to sell the property, public bid laws apply to the sale. Ordinance No. 8116 provides that the three parcels comprising the walkway will be sold "at public auction to the highest bidder ... as provided by Section 6-306(2) of the City Charter." The ordinance stipulates minimum acceptable bids. The adjacent lots are separately owned. The owners of Lots 5 and 6 may bid on Parcel 1, and the owners of Lots 13 and 14 may bid on Parcels 2 and 3. Section three of the ordinance, requiring the successful bidders to incorporate the properties into their present property, is a reasonable restriction on the future use of the property under the circumstances. The parcels are insusceptible of development because of their small size and because of the building restrictions. Further, the three parcels would have no value to anyone other than the adjacent landowners.
[7] Plaintiffs contend that the subdivision regulations of the city planning commission prohibit the sale. The Lake Terrace building restrictions state that the property is to be used as a public walkway in conformity with the regulations of the city planning commission. Section 4(e)(1) of the regulations provides in pertinent part: "In blocks over seven hundred and fifty (750) feet in length the commission may require a crosswalk near the center of the block...." The regulation uses permissive rather than mandatory language. The commission therefore is not required to establish crosswalks and has discretion to create or eliminate walkways. At the public hearing, the commission concurred with the council's decision to sell the property provided the sale was made subject to the building restrictions. The ordinance included a provision making the sale subject to all of the building restrictions in favor of the utility company and the general public. Therefore the regulations do not prohibit the sale, and plaintiffs' argument lacks merit.