ARMSTRONG, Judge.
This is an appeal from an injunction ordering the defendant-appellant to conform his property to certain building restrictions affecting his lot in a residential area. The issue on appeal is the meaning of the term “lot coverage” in the building restrictions. As we find that the trial court was not clearly wrong-manifestly erroneous in its interpretation of that term, we will affirm the judgment of the trial court.
The defendant, Gerald L. Schroeder, built a house on a lot in the Lake Vista subdivision. Pursuant to the building restrictions governing the property, he submitted his home plans to the Orleans Levee Board for review. The Levee Board’s engineer reviewed and approved the plans and the house was constructed.
Section IX of the building restrictions affecting Mr. Schroeder’s lot states that “lot coverage” shall not exceed 30%. The term “lot coverage” is not defined in the building restrictions. The house plans submitted to the Levee Board by Mr. Schroeder included a one-story garage as well as a patio with a roof over it bordered on two sides by walls of the house. Pursuant to Section IX of the [ 2building restrictions, up to 200 square feet of a one-story garage is not included in calculating compliance with the 30% rule. Also, under many years of long-established practice of the Levee Board’s engineer and his predecessor, the patio was not included in calculating compliance with the 30% rule. With 200 square feet of the garage excluded, and the patio excluded, the house plans just barely (by 24 square feet) complied with the 30% rule and were approved by the Levee Board’s engineer. The house was constructed in accordance with the approved plans and, thus, the house complied with the 30% rule.
Later, Mr. Schroeder replaced the garage door (the large garage door through which vehicles can enter the garage) with a solid'wall with windows. He also completely enclosed the patio with two walls. He did not submit to the Levee Board for approval any plans for either of these two alterations to the house. The plaintiff, The Lake Vista Property Owners Association, filed suit alleging that, with the garage and/or the patio incorporated in to the house, the house violates the 30% rule. The garage covers 223.89 square feet and the patio covers 322.43 square feet so it is apparent that, if either the garage and/or the patio is included in the calculation, the 30% rule is violated.
As to the garage, the plaintiffs contention is that, with the garage door replaced by a wall, so that vehicles can no longer enter it, the garage is no longer a garage and is, instead, just another room of the house which must be included in calculating compliance with the 30% rule. We agree. If vehicles can no longer enter, because the garage door was replaced by a wall the space can no longer be 1 ^considered a “garage”. Mr. Schroeder argues that the former garage has neither heat nor air-conditioning and is used for storage which is the use to which he has always put that space. However, Section IX allows exclusion of up to 200 square feet of a one-story “garage” from the calculation of compliance with the 30% rule. The question is whether the space can be considered a “garage” and, if vehicles cannot enter it, it certainly cannot be considered a “garage”. With the square footage of the former garage included in the calculation, the house violates the 30% rule.
*530 As to the enclosure of the patio, it is obvious that the addition of the two walls converted the patio from an outdoor area to an indoor portion of the house, i.e. an outdoor patio became a room of the house. Mr. Schroeder argues that, since the patio, as originally planned and constructed, had a roof over it and walls (i.e. then exterior walls of the house) on two sides, the patio was always part of the “lot coverage” and that nothing changed when he completely enclosed the patio so as to make it an additional room of the house. In effect, Mr. Schroeder is arguing that the house, as approved and originally constructed, violated the 30% rule because the square footage of the patio should always have been included in the calculation.
We do not agree that the area of the original (unenclosed) patio should have been included in the 30% rule calculation. As Section IX of the building restrictions does not define” lot coverage”, that term reasonably could be construed to either include or exclude an outdoor patio. As Mr. Schroeder himself argues, |4building restrictions should be construed so as to allow the least restricted use of the property. See, La. Civ.Code arts. 775-83; Lake Terrace Property Owners Ass’n v. City of New Orleans, 556 So.2d 111 (La.App. 4th Cir.1990); Diefenthal v. Longue Vue Management, 550 So.2d 1220 (La.App. 4th Cir., 1989). The Levee Board engineer’s practice, long-established over many years, of not including outdoor patios in the 30% rule calculation, construes the term “lot coverage” so as to impose the least restriction of the use of the land and, thus, is in accord with the legal rule for interpretation of building restrictions. Consequently, the original, outdoor, unenclosed patio did not cause the house to violate the 30% rule but the later enclosure connecting the patio to an indoor room of the house did cause the house to violate the 30% rule.
As to both the replacement of the garage door with a wall and the enclosure of the patio, Mr. Schroeder did not submit plans to the Levee Board for approval as required by Section II of the building restrictions (and as he had done with the original construction of the house). Had he done so, the Levee Board’s engineer could have told him, in advance of that construction, whether the replacement of the garage door with a wall and/or the enclosure of the patio would violate the building restrictions.
Lastly, Mr. Schroeder argues that the trial court erred by allowing expert testimony by the Levee Board’s engineer, Clarence A. Wethern, Jr., because Mr. Wethern had not been identified as an expert witness in pretrial proceedings. We have studied the testimony of the Mr. Wethern and conclude that he gave factual,J^rather than expert, testimony. He testified as to the practice of the Levee Board’s engineers, his own role in approving the plans for the original construction of the house, the lack of submission for approval of plans for the alterations to the house and the square footage of the original house, the garage and the patio. The closest he came to expert testimony was calculating the various square footages, but, as the trial court itself noted on the record, that was a straight forward calculation that the trial court could easily do itself. Mr. Wethern did not give expert testimony as to the meaning of the term “lot coverage” but, instead, testified as to the practice of the Levee Board’s engineers in applying that term.
For the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED.