982 So.2d 964 (2008)
Joshua RUBENSTEIN
v.
The CITY OF NEW ORLEANS.
No. 2007-CA-1211.
Court of Appeal of Louisiana, Fourth Circuit.
April 30, 2008.
Order Granting Rehearing in Part May 30, 2008.
*965 Galen S. Brown, Hamilton Brown & Babst, New Orleans, LA, for Plaintiff/Appellee.
Ira J. Middleberg, Paul J. Mirabile, Wade P. Webster, Middleberg Riddle & Gianna, New Orleans, LA, for Tracage Development, LLC.
Penya Moses-Fields, City Attorney of Orleans Parish, Evelyn F. Pugh, Chief Deputy City Attorney of Orleans Parish, Lisa B. Schneider, Assistant City Attorney of Orleans Parish, New Orleans, LA, for City of New Orleans.
(Court composed of Judge JAMES F. McKAY III, Judge EDWIN A. LOMBARD, Judge LEON A. CANNIZZARO, JR.[*]).
JAMES F. McKAY III, Judge.
Tracage Development, LLC (Tracage) obtained approval from the New Orleans City Council to erect a condominium tower in the Warehouse District of New Orleans, alongside the Mississippi River bridge ramp. Joshua Rubenstein owns a fourth floor penthouse condominium in the Lengsfield Lofts Condominiums, adjacent to Tracage's parcel. Mr. Rubenstein is opposed to the Tracage development.
After the New Orleans City Council passed Ordinance 22,384 M.C.S. approving all aspects of the Tracage project, Mr. Rubenstein filed a petition for declaratory judgment against the City of New Orleans to stop issuance of a building permit for the construction of the 24-story tower. Tracage intervened to protect its right to proceed. In his suit, Mr. Rubenstein asked that the trial court annul: City Council Ordinance No. 22,384 M.C.S. permitting Tracage to construct a new building; the decision of March 28, 2006 by the Board of Building Standards and Appeals (BBSA) rescinding its decision of November 11, 2002; and the "Declaration of Title Change by Subdivision" dated April 16, 2003, filed in the Notarial Archives which re-subdivided the parcel at issue.[1] The *966 trial court denied Mr. Rubenstein's petition for declaratory judgment and it is from this judgment that he now appeals.[2] Tracage also appeals the trial court's judgment to the extent that the judgment did not award Tracage its costs.
On Appeal, Mr. Rubenstein raises the following assignments of error: 1) the district court erred in finding that the approval by the City Planning Commission and City Council of Tracage's conditional use application was not arbitrary and capricious; 2) the district court erred in finding the re-subdivision of property requested by Tracage was not null and void for failure to provide plaintiff with prior notice and an opportunity to appear at the hearing of the City's Board of Building Standards and Appeals where the requirement that no new construction may occur within twenty feet of the Lengsfield Lofts Condominiums was rescinded; and 3) the district court erred in finding that the re-subdivision of property requested by Tracage was not null and void for failure to record a required restrictive covenant or, in the alternative, that the prohibition against new construction within twenty feet of the Lengsfield Lofts condominiums remained valid despite the failure to record the restrictive covenant. Tracage's sole assignment of error is that the trial court failed to tax costs against Mr. Rubenstein on the judgment against him.
In his first assignment of error, Mr. Rubenstein contends that the trial court erred in finding that the New Orleans City Council was not arbitrary or capricious in enacting Ordinance 22,384 M.C.S.
In reviewing the decisions of public bodies (the City Council in the instant case), the courts will not interfere with the functions of these bodies in the exercise of the discretion vested in them unless such bodies abuse this power by acting capriciously or arbitrarily. Generally, "capriciously" has been defined as a conclusion of a commission when the conclusion is announced with no substantial evidence to support it, or a conclusion contrary to substantial competent evidence. The word "arbitrary" implies a disregard of evidence or the proper weight thereof.
Lake Terrace Property Owners Association v. City of New Orleans, 567 So.2d 69, 74-75 (La.1990).
The New Orleans City Council adopted Ordinance 22,384 M.C.S. on September 21, 2006. This ordinance granted a conditional use allowing Tracage to develop its property, which was already zoned as CBD-9. CBD-9 is the most liberal of the central business district classifications and allows construction of buildings with no height restriction. The Council ordinance allowed an increase to interior parking spaces, waived an aerial setback to allow balcony extrusions, and adjusted the FAR (Floor Area Ratio).
*967 Councilwoman Stacy Head testified at trial that she met several times with Mr. Rubenstein and his attorney to consider his grievances and that she weighed all of his statements as well as those of the other neighbors and the report of the City Planning Commission in making her decision as a Councilperson. A comprehensive report was prepared by the experts of the City Planning Commission examining all aspects of the development which concluded with two well-founded reasons for the development to go forward: 1) the proposal would bring in a higher degree of residential activity in an area on the fringe of the warehouse district and adjacent to the high-rise bridge that would support the need for increasing residential services; and 2) the proposal supports the need for housing in our post-Katrina world and focuses densification on an area of the city that was least affected by the hurricane. Dr. Anthony Mumphrey, an expert in land use planning, also testified at trial that the City Council's approval of the conditional use for Tracage was not arbitrary or capricious and was a good project for the neighborhood. It is clear from the record that there was ample evidence to support the trial court's finding. Accordingly, we find no error in the trial court's finding that the New Orleans City Council was not arbitrary or capricious in enacting Ordinance 22,384 M.C.S.[3]
In his second assignment of error, Mr. Rubenstein contends that the trial court erred in not finding that the re-subdivision of property requested by Tracage was null and void for failure to provide him with prior notice and an opportunity to appear at the hearing of the City's Board of Building Standards and Appeals when the requirement that no new construction may occur within twenty feet of the Lengsfield Lofts Condominiums was rescinded. Mr. Rubinstein's contention that he has a constitutionally protected property interest in the parcel owned by Tracage is based upon his claim that a 2002 letter from the City to another prospective developer amounted to an enactment of a "building restriction" requiring a restrictive covenant to be recorded, prohibiting construction within twenty feet of the Lengsfield Lofts property boundary. However, a letter from the BBSA does not comprise a "building restriction" under Louisiana Civil Code Article 776. "Building restrictions may be established only by juridical act executed by the owner of an immovable or by all of the owners of the affected immovables." La. C.C. Art. 776. Furthermore, the version of La. R.S. 9:2755 effective at the time of the relevant acts provided: "All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto." Mr. Rubenstein admits that no building restriction was ever filed in the public records. It is also important to note that nowhere does the City ordinance that establishes the BBSA require that notice be issued to adjoining landowners. See Ordinance 21,145. Clearly, Mr. *968 Rubenstein does not have a constitutionally protected property interest in the parcel owned by Tracage. Accordingly, Mr. Rubenstein's second assignment of error is without merit.
In his third assignment of error, Mr. Rubenstein contends that the trial court erred in not finding that the re-subdivision of the property requested by Tracage was null and void for failure to record a required restrictive covenant or, in the alternative, that the prohibition against new construction within twenty feet of the Lengsfield Lofts Condominiums remained valid despite the failure to record the restrictive covenant. As stated earlier, Mr. Rubenstein's whole argument is based upon a 2002 letter from the BBSA to another prospective developer. This letter was not addressed to the Tracage developers and the restrictive covenant agreement mentioned in the letter was never filed in the public records of Orleans Parish. In order to be effective against third parties, instruments establishing restrictions must be filed for registry in the conveyance records. Blessey v. McHugh, 94-0555 (La.App 1 Cir. 7/27/95), 664 So.2d 115, 119. In the instant case, not only were the restrictions not filed in the public records, they also did not exist. Accordingly, Mr. Rubenstein's third assignment of error is also without merit.
In its sole assignment of error, Tracage contends that the trial court erred in failing to tax costs against Mr. Rubenstein on the judgment against him. Although it is the general rule that the party cast in judgment should be taxed with costs, the trial court may assess costs in any equitable manner. Spillers v. ABH Trucking Co., Inc., 30,332 (La.App. 2 Cir. 4/13/98), 713 So.2d 505, 511. A trial court also has discretion to deny costs to the prevailing party. Schlesinger v. Herzog, 95-1127, 95-1128 (La.App. 4 Cir. 4/3/96), 672 So.2d 701, 716. Based on the record before this Court, we find no abuse of discretion in the trial court's failing to tax costs against Mr. Rubenstein.
For the foregoing reasons, the judgment of the trial court in this matter is affirmed.
AFFIRMED.
LOMBARD, J., dissents.

ON REHEARING
We grant the rehearing application of the defendant/appellee, City of New Orleans, and the intervenor/appellee, Tracage Development, LLC, for the limited purpose of clarifying our April 30, 2008 opinion in this matter. Mr. Rubenstein in not entitled to a hearing before the BBSA.
LOMBARD, J., dissenting.
I respectfully dissent with the majority decision to grant the rehearing.
NOTES
[*] This opinion was approved by Judge Leon A. Cannizzaro, Jr. prior to his retirement.
[1] On November 11, 2002, the City's BBSA authorized the city square on which Mr. Rubenstein's building is located to be re-subdivided on the condition that the restrictive covenant prohibiting construction within twenty feet of the building would be recorded within thirty (30) days of the decision. The covenant was never recorded, but five months after the BBSA decision the property was subdivided anyway.
[2] Mr. Rubenstein maintains that his appeal is now moot because this Court rendered a decision on his related writ application (2007-C-1063), which ordered that Mr. Rubenstein "be given the opportunity to present his case before the Board of Building Standards and Appeals within thirty (30) days of this judgment." This decision was rendered on November 21, 2007, but was clarified by subsequent decision from this Court rendered on December 20, 2007, wherein this Court stated it did not intend to reverse the entire judgment of the district court on all issues but only intended to address the single issue raised in the writ application. This appeal concerns additional issues not raised in Mr. Rubenstein's writ application.
[3] Mr. Rubenstein also complains that because the City does not have a master plan, the current ordinance cannot be valid. Although the City Charter in Section 5-402 charges the City Planning Commission with preparing and adopting a master plan, only a portion has been adopted, with a draft completed for the remainder, which is awaiting comment and adoption. Nowhere does any City Code mandate that there must be a completion of the master plan before any zoning ordinance can be enacted. If his position were correct, the Council would be totally prohibited from taking any action on any zoning matter. However, the City Charter provides directly to the contrary. Under Section 5-404 of the City Charter, it is expressly provided that no new developments shall be allowed, except in conformity to the master plan, but only after the master plan is adopted.