689 So.2d 1358 (1997)
Marius ORTEGO and Theresa Tate Ortego d/b/a Theresa's Dress Shop
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, et al.
No. 96-C-1322.
Supreme Court of Louisiana.
February 25, 1997.
*1359 Ronald Joseph Bertrand, Bertrand & Soileau, Rayne, for Applicant.
Gary J. Ortego, Ortego & Dupre, Ville Platte; Paulin J. Laborde, Jr., for Respondent.
*1360 KIMBALL, Justice.[*]
We granted certiorari to determine the preclusive effect of a written compromise agreement, confected after commencement of an expropriation suit by the State, on a subsequent inverse condemnation suit brought by the property owner. The district court denied peremptory exceptions of no cause of action and res judicata filed by the State, through Department of Transportation and Development (DOTD), which sought the case's dismissal because the prior compromise, entered as a judgment on joint petition of both parties, contemplated just and adequate compensation for the property and rights taken and in consideration of all damages as a result of a highway widening project. Additionally, the district court granted the plaintiffs' motion in limine to exclude any documentary evidence or testimony relating to the previous expropriation suit and the settlement of that suit between the Ortegos and DOTD as it pertained to their property and the State highway project at issue. A jury trial in inverse condemnation ensued and the jury returned a verdict in plaintiffs' favor awarding $432,830.00 in total damages, consisting of $240,192.00 in costs for removal and/or relocation of the building and $192,638.00 in economic losses. The court of appeal affirmed. For the reasons explained more fully below, we reverse.

FACTS
Marius and Theresa Ortego are owners of Theresa's Dress Shop, a going concern located at the intersection of U.S. Highway 167 and David Street in Ville Platte. In May 1989, DOTD filed an expropriation petition in the Thirteenth Judicial District Court for the Parish of Evangeline naming the Ortegos as defendants. The expropriation was necessary to facilitate construction of a highway widening project, designated "State Project No. 66-07-24, Junction La 10-East (Ville Platte), on State Route U.S. 167," Petition for State at 1, State, DOTD v. Ortego, No. 49,230-A (La. 13th J.D.C. May 30, 1989), which sought to expand the highway from two to four lanes. To accomplish this, DOTD expropriated 1,163 square feet of the Ortegos' propertya portion of the business' parking areaat the corner adjacent to the intersection and deposited $4,528.00 in the registry of the court as an estimate of just and adequate compensation for the property and property rights expropriated. The Ortegos retained the services of an attorney and objected to DOTD's proposed taking and compensation by Answer. Therein, the Ortegos made a general denial and further answered that the taking constituted a constructive taking of the whole, entitling them to, inter alia, the value of the entire business and relocation expenses.
Over the course of the next two years, the Ortegos retained experts in areas such as real estate appraisal and civil engineering to aid in their opposition and to more completely analyze the proper measure of damages to the business. The Pre-Trial Order filed before compromise in August 1991 represented an outline of this effort. Among other things, the Order reflects the Ortegos were prepared to call Mr. Byron Core, an expert real estate appraiser, for the purpose of testifying as to the value and effect of the taking. Moreover, the exhibit list contained therein included right of way maps, construction project maps, and a Certificate of Location and Design.
In February 1992, the parties filed a Joint Petition in the expropriation suit record which memorialized a settlement offer by the Ortegos in the matter. The compromise adduced from the Joint Petition contemplated a reduced partial taking from that initially proposed by DOTDfrom 1,163 to 511.66 square feetand increased remuneration from the amount on deposit from $4,528.00 to $47,288.00 as just compensation for the expropriation. The district court rendered and signed a judgment reflecting this agreement. In pertinent part, the judgment stated:
Considering the joint petition filed herein by plaintiff and defendants showing that an agreement and settlement has been reached herein by said parties, in accordance *1361 with said joint petition, that the defendants desire to accept the total amount of [$47,288.00] as a final award of just and adequate compensation for the property and property rights expropriated and in full settlement of all damages, the said amount of [$47,288.00] being represented by the amount of [$4,528.00], heretofore deposited in the registry of the Thirteenth Judicial District Court for the Parish of Evangeline, and the additional amount of [$42,760.00], which said additional amount includes market value of land and improvements taken, as well as any claims for damages or other economic loses [sic], interest, attorney fees, expert fees or depositions or other trial preparation costs....
. . . .
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiff, the State of Louisiana, Department of Transportation & Development, and in favor of defendants, Marius Ortego and Theresa Tate Ortego, confirming the amount of [$47,288.00], as a final award to defendants of just and adequate compensation for the property and property rights heretofore expropriated in these proceedings and in full settlement of all damages, subject to the specific terms and conditions in the joint petition of plaintiff and defendants.
Judgment at 1-2, State, DOTD v. Ortego, No. 49,230-A (La. 13th J.D.C. Feb. 10, 1992). Consequently, the Ortegos withdrew the $47,288.00 that DOTD deposited in the court's registry.
On August 19, 1994, the Ortegos, represented by different counsel, filed the instant suit against DOTD, CLECO, and Gilcrhrist Construction, Inc.[1] Ostensibly, the plaintiffs complained that DOTD damaged them in a constitutional sense by using its prior existing right of way to its fullest extent, which resulted in a constructive taking of their entire property, building, and business causing additional damages not contemplated in the compromise. In their Petition, the plaintiffs conceded they compromised a prior expropriation suit with the State, involving their land and building located at U.S. 167 and David Street and Project 66-07-24. However, they alleged this partial taking was a "specific and limited" expropriation of Parcel 5-12-R-1, formerly Parcel 5-12, and for related damages only as to Parcel 5-12-R-1.[2] Moreover, the plaintiffs contended neither they nor their representatives knew or had any way of knowing where the actual highway would finally be situated in proximity to their property and business. (R.p. 11).
In that vein, the Ortegos claimed the present suit embodied a cause different from that compromised in the State's prior suit. They prayed for various damages in connection with the design and planning of the highway project, including building relocation costs and economic losses. In response, DOTD filed a peremptory exception of no cause of action, the substance of which addressed the preclusive effect of the prior compromised suit between the parties as covering the "taking of Parcel 5-12-R-1 and ... the construction of the improvements as built as planned," which DOTD pleaded as res judicata. After hearing argument of counsel on the exception, the district court denied the exception. Later, in answering plaintiffs' petition, DOTD asserted generally a denial of plaintiffs' allegations; however, DOTD reurged that plaintiffs' claim was res judicata due to the judgment terminating the prior litigation between the parties. The case then proceeded to trial by jury.
On the first day of trial, counsel for the plaintiffs made a motion in limine, requesting the court to exclude any documentary evidence or testimony relating to the previous suit and compromise between DOTD and the Ortegos "as it pertain[ed] to their property and the State's highway project at issue...." (R.p. 198). The court granted the motion *1362 over DOTD's objection, which constrained DOTD from any reference to the prior compromise throughout the course of trial. The parties also entered into a stipulation that the damages sought by the Ortegos in the case was based on the "design, planning or specification of the entire project and highway and not the construction itself."
At the conclusion of the plaintiffs' case DOTD's counsel moved for a directed verdict, arguing the plaintiffs failed to introduce any evidence as to changes or design factors which would not have been contemplated in the prior litigation. Referring to its earlier rulings with regard to the prior suit, the court denied DOTD's motion. DOTD thereafter commenced its case-in-chief, proffering, in addition to earlier proffers necessitated in examining the plaintiffs' witnesses with regard to the prior litigation, Proffers 7 and 8. Proffer 7 contained a stipulation as to the testimony of Mr. Byron Core, the Ortegos' expert real estate appraiser from the prior expropriation case. Proffer 8 exhibited the compromise offer from the Ortegos to the State in the prior suit, which relied in large measure on the findings of experts in arriving at the offer.
The jury returned a verdict for the Ortegos. The State was found negligent in its "design, planning and/or construction" of the project as it pertained to and affected the Ortegos' property. The jury awarded the Ortegos cost to cure damages totaling $432,830.00, comprised of $240,192.00 in costs for removal and/or relocation of the building and $192,638.00 in economic losses. DOTD suspensively appealed.
The court of appeal affirmed the judgment. Finding the cause of action in the first suit involved damages related to a limited expropriation and the present case entailed an inverse condemnation, the court of appeal found no error in the district court's denial of the peremptory exception of res judicata. Ortego v. State, DOTD, 95-830 p. 8 (La.App. 3d Cir. 4/24/96); 673 So.2d 1168, 1173. The court of appeal also agreed with the district judge's ruling on the motion in limine. Id. at p. 10, 673 So.2d at 1174. Although the appellate court disagreed with the trial judge in finding transaction or compromise was properly raised by DOTD, it found the Ortegos alleged damage elements not encompassed in the earlier judgment. Id. However, the court of appeal found the district court correctly dismissed the motion in limine because it substantively paralleled the res judicata exception earlier denied. Id.
We granted DOTD's application for certiorari, Ortego v. State, DOTD, 96-1322 (La.9/13/96); 679 So.2d 97, to determine whether the lower courts departed from proper judicial proceedings in failing to accord preclusive effect to the parties' prior compromise in the later suit in inverse condemnation. La. Sup.Ct. R. X, § 1(a)(5).

LAW
Act 521 of the 1990 Regular Session of the legislature made substantial changes to the concept of civilian res judicata long present in our law. 1990 La. Acts 521, § 1; see Mitchell v. Bertolla, 340 So.2d 287 (La.1976) (utilizing civilian concept of res judicata). In short, the revision introduced the "transaction or occurrence" model to arrive at the preclusive effect of the first action. LSA-R.S. 13:4231. This differs from the narrower civilian approach explained by Justice Dixon in Mitchell, which required identity of "cause," or grounds, in the two suits for a res judicata plea to obtain. Mitchell, 340 So.2d at 291-292; see Rivet v. First Financial Bank, FSB, 538 So.2d 216, 220-221 (La.1989) (explaining Mitchell.) The revision act expressly instructed, however, the effective date of the revised law to be January 1, 1991, and "shall apply to all civil actions filed on or after January 1, 1991." 1990 La. Acts 521, § 5. Moreover, "[t]he preclusive effect and authority of a judgment rendered in an action filed before the effective date ... shall be determined by the law in effect prior to January 1, 1991." Id.
In this instance, DOTD filed the expropriation petition in the compromised suit on May 31, 1989. Therefore, the preclusive effect of the first lawsuit is governed by pre-revision res judicata law. See McClendon v. State, DOTD, 94-0111 p. 3 (La.9/6/94); 642 So.2d 157, 159.
*1363 Before the 1990 revision, the res judicata statute contained in section 4231 of Title 13 provided:
The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the thing demanded must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.
The courts also have recognized these as necessary elements to preclude re-litigation of the object of a judgment, clearly requiring: (1) an identity of the parties; (2) an identity of "cause"; and (3) an identity of the thing demanded. McClendon, 642 So.2d at 159 (citing Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La.1978), on remand, 365 So.2d 586 (La.App. 1st Cir.1978), appeal after remand, 393 So.2d 270 (La.App. 1st Cir.1980)); see also Rivet, 538 So.2d at 220 (articulating same parties, same cause, and same thing demand as threshold requirements). While the doctrine of res judicata is ordinarily premised on a final judgment on the merits, it also applies where there is a transaction or settlement of a disputed or compromised matter that has been entered into by the parties. Bailey v. Martin Brower Co., 94-1179 p. 3 (La.App. 1st Cir.1995); 658 So.2d 1299, 1301. Thus, compromises have the legal efficacy of the thing adjudged. LSA-C.C. art. 3078;[3]Rodriguez v. Louisiana Tank, Inc., 94-0200 p. 9 (La.App. 1st Cir. 6/23/95); 657 So.2d 1363, 1369, writ denied, 95-2268 (La.11/27/95); 663 So.2d 739.
The Civil Code postulates transaction or compromise as a mutual agreement between two or more persons for the benefit of preventing or terminating a lawsuit in the manner in which they agree and in the balance of reciprocal concessions. LSA-C.C. art. 3071; see Brown v. Drillers, Inc., 93-1019 (La.1/14/94); 630 So.2d 741, 747 n. 8. Consequently, a party claiming res judicata based on a compromise agreement must have been a party to the compromise, and the authority of the thing adjudged extends only to the matters those parties intended to settle. Brown, 630 So.2d at 747.
A compromise instrument is the law between the parties and must be interpreted according to the parties' intent. Ritchey v. Azar, 383 So.2d 360, 362 (La.1980). It follows that the compromise instrument is governed by the same general rules of construction applicable to contracts. Brown, 630 So.2d at 748.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art.2046. Article 2046 emphasizes that the process involves no further interpretation, as opposed to no interpretation at all. Expose' Des Motifs of the Project of Titles III and IV of Book III of the Civil Code of Louisiana, p. 67 (1984); R. MacLean, Judicial Discretion in the Civil Law, 43 La. L.Rev. 45, 55-56 n. 28 (1982). Because a compromise extends only to those matters the parties intended to settle, the scope of the transaction cannot be extended by implication. LSA-C.C. art. 3073; see Comment, Compromise in Louisiana, 14 Tul. L.Rev. 282, 283 (1940). In applying this rule of construction, courts are guided by the general principle "that the contract must be considered as a whole and in light of attending events and circumstances." Brown, 630 So.2d at 748 (citing Succession of Teddlie, 385 So.2d 902, 904 (La.App. 2d Cir.), writ refused, 393 So.2d 742 (La.1980)).
The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the instrument's four corners, and extrinsic evidence is inadmissible either to explain or to contradict the instrument's terms. Dixie Campers, Inc. v. Vesely Co., 398 So.2d 1087, 1089 (La.1981); see also Leenerts Farms, Inc. v. Rogers, 421 So.2d 216, 218 (La.1982). When a dispute arises as to the scope of a *1364 compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle. Moak v. American Automobile Ins. Co., 242 La. 160, 134 So.2d 911 (1961); see Brown, 630 So.2d at 749 n. 11.
A valid compromise may form the basis of a plea of res judicata. Rivett v. State Farm Fire and Casualty Co., 508 So.2d 1356, 1359 (La.1987); Brown, 630 So.2d at 747 n. 7; Bielkiewicz v. Rudisill, 201 So.2d 136, 140-41 (La.App. 3d Cir.1967) (Tate, J.). Of course, the affirmative defense of transaction or compromise must be affirmatively pleaded in the answer in the absence of a res judicata plea. LSA-C.C.P. art. 1005.[4]

DISCUSSION
DOTD complains the lower courts erred in refusing its plea of res judicata, which plea was based on the written compromise agreement entered as a judgment on the joint petition of both parties. After a review of the entire record, the court of appeal rejected DOTD's res judicata argument, reasoning that although there was identity of the parties, the cause of the subsequent litigation was differentsounding in inverse condemnation and unrelated to the prior partial taking. We disagree with the lower courts' determination with regard to res judicata, but for reasons pertaining to the compromise issues involved in these two lawsuits.[5]
As an initial matter, in accordance with this court's pronouncements in Brown and Rivet, supra, we find that DOTD properly raised the transaction or compromise defense by its res judicata plea. Additionally, we note that DOTD reurged res judicata in its Answer which otherwise served as a general denial. Moreover, DOTD's counsel noted objections, the substance of which related to the trial court's refusal to entertain the prior compromise as res judicata, at several points during the plaintiffs' case-in-chief, as well as moving for a directed verdict after the plaintiffs' case, again on the basis of res judicata. Therefore, DOTD's res judicata plea was properly before the court throughout trial.
For the first lawsuit to acquire the authority of the thing adjudged, DOTD must show the essential elements of res judicatasame parties, same "cause", and same thing demandedare present. Unquestionably, the same parties were involved in the two lawsuits at issue here. Marius Ortego and Theresa Tate Ortego, owners of the land and dress shop building, were defendants in the 1989 expropriation lawsuit brought by DOTD, and the Ortegos are plaintiffs against DOTD in the present inverse condemnation case. Therefore, the first necessary element of res judicata clearly is met.
The next two res judicata elementssame "cause" and same thing demandedare supplied by the compromise agreement between the parties entered as a judgment in 1992. We find, based on a thorough review of this record, which includes the entire record of the first lawsuit, that the compromised lawsuit acquired the authority of the thing adjudged precluding the Ortegos' subsequent suit styled as an inverse condemnation claim.
In so holding, we find no error in the district court's denial of the peremptory exception of res judicata based upon the record before the court at that time. The record reflects DOTD put forth no evidence at the exception hearing regarding the compromise agreement's preclusive effect, relying instead on argument alone.[6] Clearly, this was insufficient where the premise of the exception was the prior compromise between the parties. DOTD did, however, additionally allege res judicata in its Answer. Thus, even though no evidence supporting the compromise's preclusive effect was before the court *1365 at the exception hearing, the res judicata plea remained a viable issue at trial.
Consequently, we find the district court erred in granting the expansive motion in limine which served to excise from jury consideration any reference to the prior compromise between the parties, notwithstanding DOTD's plea of res judicata based on the compromised judgment in its Answer. This blanket exclusion essentially sequestered from jury consideration evidence relevant to res judicata based on the prior compromise, and any deliberation therein regarding planning and design.
The parties stipulated at the beginning of trial the second lawsuit was based on the planning and design of the highway project, and not the construction itself. Additionally, the plaintiffs in their Petition contended neither they nor their representatives in the first lawsuit knew or had any way of knowing where the actual highway would finally be situated in proximity to their property. Hence, the plaintiffs basically urged the project's design and planning, and not the construction which took place subsequent to the first lawsuit's compromise, were a different cause and thing demanded in the second lawsuit.
The court of appeal found the expropriation compromise clearly intended to resolve only a limited partial taking by DOTD. As earlier noted, the agreement states the compromise amount to be "a final award of just and adequate compensation for the property and property rights expropriated and in full settlement of all damages...." Additionally, the agreement states the "amount include[d] market value of land and improvements taken, as well as any claims for damages or other economic losses...." We find the agreement, and these passages in particular, vague in scope and unclear with regard to the differences the parties intended to settle. The ambiguity begs the question whether the compromise clearly extended merely to a limited partial taking or also to damages such as those asked for in the present lawsuit. Therefore, we must look to extrinsic evidence, including that proffered by DOTD, to determine what differences the parties intended to settle and the scope of the compromise agreement.
From 1989 to 1991, in preparing their opposition to the State's proposed taking, the Ortegos retained a new attorney and experts to aid in evaluating the value and effect of the taking. In the first lawsuit's Pre-Trial Order, the Ortegos expected to call Mr. Byron Core, an expert real estate appraiser, and Mr. Paul Fontenot, a civil engineer. In addition, the Ortegos contemplated using right of way maps and construction project plans among other exhibits at trial. Based on their representatives' findings, the Ortegos negotiated a compromise agreement with DOTD, which culminated in the first lawsuit's compromise and judgment.
Given that the second lawsuit expressly did not concern the project's construction, only design and planning, the compromise from the first lawsuit acquires preclusive effect against the latter lawsuit if planning and design were intended to be compromised in the first lawsuit. Proffer 7 introduced by the State in the second lawsuit contained a stipulation as to the testimony of Mr. Byron Core, the Ortegos' expert real estate appraiser in the first lawsuit. The stipulation provided:
1. Mr. Byron Core is an expert real estate appraiser.
2. Mr. Core did complete before and after appraisal of the subject property for Marius and Theresa Ortego in connection with the matter captioned State of Louisiana, Department of Transportation and Development vs. Marius Ortego, et ux, No. 49,230-A on the docket of this court on or before Nov. 12, 1991.
3. In connection with his appraisal Mr. Core reviewed the right of way maps and construction plans and concluded that the amount due the Ortegos for severance damages and other economic losses as a result of the taking and the construction of the project as planned was $23,296.00.
4. Mr. Core was aware of the distance between the Ortegos' building and the new travel lanes and considered the location of the travel lanes in his determination of just compensation.

5. Mr. Core has viewed the project as built and concluded the effect of the construction *1366 on Theresa's dress shop was as expected and that there is no additional compensation due the Ortegos.

(emphasis added).
We find Mr. Core's stipulation as to testimony in the second lawsuit, in conjunction with the existence of the right of way maps and construction plans on the Ortegos' exhibit list in the Pre-Trial Order filed in the first lawsuit, shows the real premise of the second lawsuitespecially considering the stipulation regarding constructionwas no different than that intended to be compromised in the first lawsuit. Moreover, the information gleaned by the Ortegos and their representatives from the right of way maps and construction plans, as well as their real estate appraiser's knowledge regarding the project's effect in reaching a value in compromise, evidenced an intent on the Ortegos' part to compromise more than a "limited expropriation." Given that the Ortegos' contemplated the effect of the project's planning and design, in the form of right of way maps and construction plans, and considered the proximity of travel lanes in relation to their property, we conclude the "cause" and thing demanded in the two lawsuits were, after careful review, indeed the same.
For these reasons, we find the lower courts' failure to give effect to DOTD's res judicata plea to be manifestly erroneous in view of this record in its entirety. Accordingly, we hold the parties' compromise should have been accorded preclusive effect as to the subsequent inverse condemnation lawsuit.

DECREE
The judgment of the court of appeal is reversed. The case is dismissed at plaintiffs' cost as res judicata.
KITCHENS, J. Ad Hoc, concurs and assigns reasons.
KITCHENS, Justice Ad Hoc, concurring.
I agree with the result reached, but I would find that the compromise agreement was not vague, but was clear and unambiguous in its expressed intent to be in full settlement of all damages. It should therefore have the effect of res judicata.
NOTES
[*] Judge Graydon K. Kitchens, Jr., 26th Judicial District Court, and Judge Ian W. Claiborne, 18th Judicial District Court, participating as associate justices ad hoc in place of Justice Jack C. Watson and Justice E. Joseph Bleich. Calogero, C.J., not on appeal. Rule IV, Part 2, § 3.
[1] CLECO, the owner of the power lines located above the dress shop, and Gilchrist, the highway contractor, were dismissed prior to trial. Accordingly, neither CLECO nor Gilchrist are parties to this appeal.
[2] Parcel 5-12 represents the 1,163 square feet of property the State proposed taking in the prior expropriation litigation. Parcel 5-12-R-1 identifies the reduced taking agreed on by the parties in the expropriation suit's compromise.
[3] Article 3078 provides:

Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected.
[4] Nonetheless, a motion for summary judgment can be granted based on a finding of res judicata when there is no genuine issue of material fact. Brown, 630 So.2d at 747 n. 7; R.G. Claitor's Realty v. Juban, 391 So.2d 394, 403 (La.1980) (on rehearing).
[5] We pretermit the issue of whether a prior compromised expropriation lawsuit acquires preclusive effect, as a matter of law, with regard to a simultaneously or subsequently brought inverse condemnation lawsuit.
[6] Minute Entry, Ortego v. State, DOTD, No. 55,668-A (La. 13th J.D.C. Nov. 23, 1994).