| .MARION F. EDWARDS, Judge.
This is an appeal from the trial court’s judgment in favor of Brightway Services, Inc., in this suit on an open account. For the following reasons, the judgment of the trial court is affirmed.
FACTS AND PROCEDURAL HISTORY
Tae-Il Chun, doing business as Plus Insurance Agency (hereinafter referred to collectively as “Chun”), approached Brightway Services, Inc. (“Brightway”), for the purpose of having a sign awning manufactured and placed outside of Chun’s new office location in Jefferson Parish. After reviewing several options, Chun approved a final design for the sign and, on December 10, 1997, entered into a contract with Brightway. Brightway subsequently completed and installed Chun’s sign.
Shortly after the sign was installed, Chun contacted Brightway and informed them that the sign was not made according to his specifications. | ¡¡Specifically, Chun alleged that the sign in question, when lighted at night, showed the aluminum support “ribs” beneath, which obscured the lettering on the sign, making it harder to read. After Chun’s request to have the sign altered was not granted, Chun indicated that he would not pay the balance due. On March 10, 2000, Brightway filed A Petition For Suit On An Open Account in First Parish Court for the Parish of Jefferson. Chun answered the suit on March 22, 2000, and filed a reconventional demand.
Trial of the matter was held on September 30, 2002. On that date, the trial court ruled in favor of Brightway, awarding $3,129.00. The trial court dismissed Chun’s reconventional demand. Chun timely filed the present appeal.
LAW AND ANALYSIS
On appeal, Chun raises four assignments of error: 1) That the trial court erred in accepting the testimony of Brightway’s representatives that Chun had not specifically told them that he wanted a sign without “ribs” showing when lighted; 2) The trial court erred in failing to apply the proper law concerning the interpretation of contracts; 3) The trial court erred in directly questioning Chun at the conclusion of the trial without allowing Chun to complete his answer, and; 4) The trial *866 court erred in forming its conclusion that the lines in the photograph it had before it were caused by “ribs” when Brightway’s representatives testified that the “ribs” of the sign were before the lights and thus were not possible to observe when the sign was lighted.
In his first assignment of error, Chun asserts that the trial court erred in accepting the testimony of Brightway’s representatives that Chun had not specifically told them that he wanted a sign without “ribs” showing when lighted.
14At trial, Chun testified that when he initially contacted Brightway to manufacture the sign for him, he indicated that he wanted a sign comparable to that of the “Herbert Wiltz” insurance company, which Brightway had also manufactured. Chun stated that he specifically liked the fact that there were “no lines on the face of the [Herbert Wiltz] design,” but that he realized that any sign he would have made would be different in dimension and shape. Chun further stated that he had no knowledge or understanding that his sign would have the aluminum support “ribs” showing through. Chun also said that in the proposed drawings of the sign that he approved, there were no indications that the “ribs” would be visible. Chun testified that he did not have any written documentation that shows he had specifically indicated that the sign be made without support ribs showing.
Brightway’s vice president and sales representative, Warren Sciortino, testified that he had met with Chun on several occasions regarding the manufacturing of the sign. He said that Chun had indicated to him that he wanted a sign similar to the ‘Wiltz” canopy sign, but that a sign comparable in size was not within Chun’s budget. Sciortino stated “most of the awnings that are built all have ribs.” Sciortino indicated that that, in some cases, the lighting can be placed over the internal supports, thereby eliminating the shadows, but that it would not have been possible to do so with Chun’s sign, because the slant of the sign would have made the text unreadable. Sciortino said that none of Brightway’s renderings show ribs in the awnings. Sciortino further stated that at no time during his conversations with Chun did the issue of ribs in the awning ever come up.
IfiThe court of appeal may not set aside the trial court’s findings of fact, in the absence of manifest error or unless the findings are clearly wrong.[1] Furthermore, “where two permissible views of the evidence exists, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.”[2]
After a review of the record, we cannot say that the trial court was clearly wrong in finding that the testimony of Bright-way’s representatives was credible. Accordingly, we find this assignment to be without merit.
We next address Chun’s assertion that the trial court erred in failing to apply the proper law concerning the interpretation of contracts. The contract in question, signed by Sciortino and Chun on December 12,1997, was entered into evidence at trial. The contract called for Brightway to “Manufacture and install 32' awning with egg crate per Design # 7230” at a cost of $4,896.00.
Chun argues that the contract between himself and Brightway failed to address whether or not support “ribs” would be visible on the sign, and that this omission *867 constitutes a defect that must be interpreted against Brightway, who furnished the text of the contract.[3] Chun further claims that the testimony of Brightway’s sales representative, Warren Sciortino, that Chun had not specified that he did not want the ribs to show through the sign, was not credible.
Conversely, Brightway argues that the sign was constructed and delivered pursuant to the specifications that Chun approved in the contract. Brightway further points out that Chun testified that he had nothing in writing to indicate that he wanted a sign where no ribs were visible.
|fiLa. C.C. art.2045 provides that the interpretation of a contract is the determination of the common intent of the parties. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.[4] The meaning and intent of the parties to a written instrument is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument.[5]
After a review of the record, we cannot say that, based upon the evidence presented, the trial court erred in finding that Chun’s intent was clearly expressed within the four corners of the contract. Accordingly, we find this assignment to be without merit.
Chun’s third and fourth assignments of error relate to the trial court’s finding that the “Herbert Wiltz” sign, which Chun showed to Brightway as an example of the type of sign he wanted, contained visible ribs.
At trial, photographs of the “Herbert Wiltz” sign were introduced as exhibits by Brightway. Chun first argues that the trial court erred in directly questioning him about the photographs of the sign at the conclusion of the trial without allowing him to fully complete his answers. Specifically, Chun refers to the following exchange:
THE COURT: But if you look at [exhibits] one and two, on the corner of this this [sic] is ribs are they not?
CHUN: Right.
THE COURT: And there is another rib coming down here, and there is [sic] three of four ribs on the front; is that correct?
CHUN: Right. But mine, this line keep [sic] coming—
|7THE COURT: I know that but that is the way they’re built. You can’t build these signs without ribs, can you? Even this sign has ribs that show does it not Mr. Chun?
CHUN: Yes, sir. It shows on the top not going—
THE COURT: Then what is this line going down the “R”, is that a rib? The line going down the “R”? It’s a black line is it not? There is a black line going down the “E”. Look at it over here between the T and the Z there is a black line going down it. Look on this side. You can see them sticking out between the T and the Z and right behind the Z. This one does have ribs that shows in spots.
Chun asserts that by not allowing him to fully respond to the questions asked, the trial court came to an erroneous conclusion that the shadows in the photograph were caused by the support ribs.
*868 While it appears that Chun did not complete his answers to questions asked by the trial court, the record shows that Chun testified earlier in the proceedings that the sign he showed as an example to Bright-way did not contain visible ribs on the face of the sign. Chun also testified earlier in the trial that the support ribs in his sign show through the awning at night, and was therefore different from the sign that he used as an example. We find that the questioning by the court did not prevent Chun from presenting his case, as he had an opportunity to disclose his position earlier in the trial.
Finally, Chun argues that the trial court erred in finding that the lines in the photograph of the were caused by the support ribs after testimony from Bright-way representatives that the “Herbert Wiltz” sign contained lights that were on top of the support ribs, thereby making the ribs impossible to observe when lit.
At trial, Brightway’s representative, Warren Sciortino, was questioned about the physical make up “Herbert Wiltz” sign. Sciortino testified that the size of the “Wiltz” awning made it possible to bring the rib supports approximately two feet back from the inside face of the sign, and to place it |sover the ribs so that no shadows were visible. Sciortino also pointed out, however, that on certain portions of the “Wiltz” sign’s face, ribs actually were visible through the awning.
As Chun offered no alternate explanation at trial as to what may have caused the shadows on the “Wiltz” sign, we do not find the trial court’s conclusion, that the shadows were actually caused by the support ribs, to be erroneous.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).

. Stobart v. State, 617 So.2d 880, 882-883 (La.1993).

. La. C.C. arts.2056 and 2057.

. La. C.C. art.2046.

. Ortego v. State, DOTD, 96-1322 (La.2/25/97), 689 So.2d 1358.