994 So.2d 126 (2008)
Mark ROCCAFORTE, husband of/and Nadine Roccaforte
v.
WING ZONE, INC. and Commercial Marine Insurance Company.
No. 2007 CA 2451.
Court of Appeal of Louisiana, First Circuit.
August 21, 2008.
*127 Brian G. Shearman, John H. Denenea, Jr., New Orleans, LA, for Plaintiff/Appellant Mark Roccaforte, husband of/and Nadine Roccaforte.
John F. Deas, J. Francois Allain, Metairie, LA, for Defendant/Appellee Slidell Wings, LLC d/b/a Wing Zone, Inc.
Before GAIDRY, McDONALD, and McCLENDON, JJ.
McCLENDON, J.
The plaintiffs appeal the judgment of the trial court that granted the defendant's motion for summary judgment. For the following reasons, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
On June 28, 2005, Mark Roccaforte was injured in an automobile accident in Slidell, Louisiana, when Joshua Lizana ran a red light and hit Mr. Roccaforte's vehicle. Subsequently, Mr. Roccaforte settled with Mr. Lizana and Mr. Lizana's automobile insurance carrier, Louisiana Farm Bureau Casualty Insurance Company (Farm Bureau), for Mr. Lizana's policy limits in the amount of $10,000 and executed a Restricted Release on April 5, 2006, as well as a Full Release and Settlement of Claim on April 11, 2006.
Thereafter, Mr. Roccaforte, as husband of/and Nadine Roccaforte, filed suit on May 31, 2006, naming as a defendant, *128 Wing Zone, Inc. (Wing Zone).[1] The plaintiffs alleged that at the time of the accident, Mr. Lizana was working in the course and scope of his employment with Wing Zone and, therefore, under the doctrine of respondeat superior, Wing Zone was liable for Mr. Roccaforte's injuries. The plaintiffs later amended their petition to add as a defendant, Progressive Security Insurance Company (Progressive), as the uninsured/underinsured motorist (UM) carrier on the vehicle that was being operated by Mr. Roccaforte.
On May 25, 2007, Wing Zone filed a motion for summary judgment, asserting that Wing Zone was only vicariously liable for Mr. Roccaforte's damages because of its status as Mr. Lizana's employer and, therefore, settlement with and release of Mr. Lizana and Farm Bureau from liability for any damages arising out of the accident resulted in Wing Zone's release from liability as well. Wing Zone also contends that the language of the releases also discharged all solidary obligors, which included Wing Zone.
The matter was set for hearing and judgment was rendered on August 30, 2007, and signed on September 10, 2007, granting the motion for summary judgment. The plaintiffs appealed.

APPLICABLE LAW

Summary Judgment
Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2). Appellate courts review summary judgments de novo under the same criteria that govern the trial court's determination of whether a summary judgment is appropriate, Duplantis v. Dillard's Dept. Store, 02-0852, p. 5 (La.App. 1 Cir. 5/9/03), 849 So.2d 675, 679, writ denied, 03-1620 (La.10/10/03), 855 So.2d 350. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial, its burden on the motion does not require it to negate all essential elements of the adverse party's action, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is "material" for summary judgment purposes can be seen only in light of the substantive law applicable to the case. Dickerson v. Piccadilly Restaurants, Inc., 99-2633, pp. 3-4 (La.App. 1 Cir. 12/22/00), 785 So.2d 842, 844.

Compromise
A compromise instrument is the law between the parties and must be interpreted according to the parties' intent. It follows that the compromise instrument is governed by the same general rules of construction applicable to contracts. Trahan *129 v. Coca Cola Bottling Co. United, Inc., 04-0100, p. 14 (La.3/2/05), 894 So.2d 1096, 1106-07; Ortego v. State, Dept. of Transp. and Dev., 96-1322, p. 7 (La.2/25/97), 689 So.2d 1358, 1363. Therefore, when the words are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046. Further, a compromise extends only to-those matters the parties intended to settle and the scope of the transaction cannot be extended by implication. LSA-C.C. art. 3076[2]; Trahan, 04-0100 at p. 15, 894 So.2d at 1107; Ortego, 96-1322 at p. 7, 689 So.2d at 1363; Brown v. Drillers, Inc., 93-1019, p. 7 (La.1/14/94), 630 So.2d 741, 748. Courts apply this rule of construction in light of the general principle that the instrument must be considered as a whole and in light of attending events and circumstances. Trahan, 04-0100 at p. 15, 894 So.2d at 1107; Ortego, 96-1322 at p. 7, 689 So.2d at 1363; Brown, 93-1019 at p. 8, 630 So.2d at 748.
The meaning and intent of the parties to a compromise is ordinarily determined from the four corners of the instrument, and extrinsic evidence is inadmissible to explain or to contradict the terms of the instrument. Trahan, 04-0100 at p. 15, 894 So.2d at 1107; Ortego, 96-1322 at p. 7, 689 So.2d at 1363. Nevertheless, when a dispute occurs regarding the scope of a compromise, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle. Thus, a general release will not necessarily bar recovery for those aspects of a claim not intended by the parties to be covered by the release. Brown, 93-1019 at p. 9, 630 So.2d at 749. However, absent some substantiating evidence of mistaken intent, no reason exists to look beyond the four corners of the instrument to ascertain the parties' intent. Trahan, 04-0100 at p. 15, 894 So.2d at 1107; Brown, 93-1019 at p. 9, 630 So.2d at 749. Utilizing a case-by-case, factual analysis, Louisiana courts have limited the rule's application to cases in which substantiating evidence is presented establishing either (1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim. Brown, 93-1019 at p. 9, 630 So.2d at 749.

DISCUSSION
In the present matter, the Restricted Release signed by Mr. Roccaforte on April 5, 2006, released and discharged Mr. Lizana and Farm Bureau from all claims and demands related to the automobile accident at issue. The release also provided:
I do further hereby agree to indemnify and hold harmless the said Joshua Lizana and Farm Bureau Insurance Company of and from any and all further claims that may be made or asserted by me or because of injuries, damages, loss or expenses suffered in the aforesaid accident, whether such claim is made by way of indemnity, contribution, subrogation or otherwise.
The last paragraph of the restricted release reserved Mr. Roccaforte's rights to proceed against Progressive, his UM carrier, and any other underinsured or uninsured motorist carrier applicable.
*130 The Full Release and Settlement of Claim signed by Mr. Roccaforte on April 11, 2006, stated, in pertinent part, that he did:
hereby release, acquit and forever discharge the said payor(s), their agents and employees, officers, directors, and all other persons, firms or corporations who are or might be liable, from any and all actions, causes of actions, claims, demands, damages, costs, loss of services, loss of consortium, expenses, punitive and/or exemplary damages, attorney fees, statutory penalties, interest and compensation on account of or in any way growing out of any and all known and unknown death or deaths, personal injuries and property damage, resulting or to result from an accident that occurred on or about the 28th day of June 2006 . . . including any other claims that [I] may have which arose at the time of. . . such accident. . . .
This release also included the handwritten note that "any and all rights reserved to proceed against any underinsured motorist applicable."
Wing Zone initially contends that because Mr. Lizana was released from liability for damages resulting from the accident, it was released from liability as well. Wing Zone admits that it was Mr. Lizana's employer at the time of the accident and that it was a solidary obligor with Mr. Lizana, pursuant to LSA-C.C. art. 2320. However, Wing Zone contends that when Mr. Roccaforte released Mr. Lizana from liability for all damages arising out of the accident, all solidary obligors were released, including Wing Zone. We disagree.
In Sampay v. Morton Salt Co., 395 So.2d 326 (La.1981), the plaintiff was injured in an automobile accident and filed suit against the driver and the driver's employer; however, plaintiff was unsure whether Morton Salt Company or Davis Truck Service employed the driver, so plaintiff timely filed suit against both companies and their respective liability insurers in the alternative. Sampay later settled his claims against the driver and against Davis Truck Service, but he reserved his rights to proceed against Morton. Morton then filed a motion for summary judgment, arguing that because Sampay had dismissed the driver, the release of the employee discharged Morton from any further liability as the driver's purported employer. Although summary judgment was granted, the supreme court reversed, holding that the plaintiff's release of the employee from suit did not preclude recovery against the remaining employer. The court stated: "That the employer's liability is vicarious is important only in relation to the ultimate allocation of the obligation between the employer and the employee. From the viewpoint of the victim, the employer and the employee are solidary obligors." Sampay, 395 So.2d at 329.
Thereafter, in Etienne v. National Auto. Ins. Co., 99-2610, p. 5 (La.4/25/00), 759 So.2d 51, 55-56, the supreme court explained that the legislature codified its holding in Sampaythat dismissal of a solidary obligor from suit does not prohibit an obligee from proceeding against remaining solidary obligorsby enacting LSA-C.C. art. 1802.[3] The court also noted that the Revision Comments to art. 1802 further indicate an obligee need not reserve rights against remaining solidary obligors *131 in order to proceed against those solidary obligors for fulfillment of the obligation. Thus, based on this argument, the release of Mr. Lizana, with the timely filing of suit against Wing Zone, does not prohibit Mr. Roccaforte from proceeding against Wing Zone.
However, Wing Zone also contends that the clear language of the releases discharges it from liability. In response, Mr. Roccaforte argues that the releases show the intent to dismiss only Mr. Lizana and Farm Bureau for the underlying policy limits of $10,000.
A strict reading of the body of the releases, without more, suggests an unequivocal release of all claims against all persons arising from the accident. However, in opposition to Wing Zone's summary judgment motion, Mr. Roccaforte submitted his own affidavit wherein he stated that he entered into a settlement with Mr. Lizana and Farm Bureau, reserving his rights against the only possible known defendant, his UM carrier; that it was not until April 25, 2006, that he learned from correspondence from Progressive that Mr. Lizana was working in the course and scope of his employment with Wing Zone at the time of the accident; that after learning of the potential liability of Wing Zone as the employer of Mr. Lizana, he filed suit against Wing Zone; that it was his intent to retain all of his rights to all other possible responsible parties; and that it was never his intent to completely dismiss the entire matter, but was to proceed against the next available insurance policy and/or liable tortfeasor/company. Mr. Roccaforte also attached a copy of the April 25, 2006 letter from Progressive indicating that Mr. Lizana was in the course and scope of his employment with Wing Zone at the time of the accident.
Following a de novo review of the record, we conclude that questions regarding the scope of the parties' compromise still remain in this matter. The first signed settlement document released and discharged only Mr. Lizana and Farm Bureau from all claims and demands related to the automobile accident herein. It was the second release that contained the more general "boilerplate" release language. Further, in both releases, Mr. Roccaforte specifically reserved his rights against his UM insurance carrier, indicating an intent to limit the release language and reserve rights against other known and potentially responsible parties. We also note that because Mr. Roccaforte did not know about Wing Zone at the time, Wing Zone neither participated in the settlement negotiations nor contributed anything towards the settlement. Lastly, Mr. Roccaforte's affidavit indicates his intent to retain all of his rights to any other possible responsible parties. Therefore, genuine issues remain as to the scope of the parties' intent, Mr. Roccaforte having presented substantiating evidence that he did not intend to release his claim against Wing Zone. Accordingly, the defendant's motion for summary judgment should not have been granted.

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting Wing Zone's motion for summary judgment and dismissing the Roccafortes' claims against it with prejudice is hereby reversed, and the matter is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed to Wing Zone.
REVERSED AND REMANDED.
McDONALD, J., concurs.
NOTES
[1] The defendant has pointed out that its correct name is Slidell Wings, LLC d/b/a Wing Zone, Inc.
[2] We note that the Civil Code articles on compromise were revised, amended, and reenacted by Acts 2007, No. 138, eff. August 15, 2007. Current Article 3076 reproduces the substance of former Article 3073 and is not intended to change the law. See LSA-C.C. art. 3076, 2007 Revision Comments.
[3] Civil Code article 1802 provides:

Renunciation of solidarity by the obligee in favor of one or more of his obligors must be express. An obligee who receives a partial performance from an obligor separately preserves the solidary obligation against all his obligors after deduction of that partial performance.