SAUNDERS, J.,
dissents and assigns written reasons.
|,I disagree with the majority opinion. Louisiana Civil Code Article 3076 states, “[a] compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express.” The majority cites the following:
A compromise instrument is the law between the parties and must be interpreted according to the parties’ intent. It follows that the compromise instrument is governed by the same general rules of construction applicable to contracts.
*711 When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. [Louisiana Civil Code] Article 2046 emphasizes that the process involves no further interpretation, as opposed to no interpretation at all. Because a compromise extends only to those matters the parties intended to settle, the scope of the transaction cannot be extended by implication. In applying this rule of construction, courts are guided by the general principle that the contract must be considered as a whole and in light of attending events and circumstances.
The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the instrument's four corners, and extrinsic evidence is inadmissible either to explain or to contradict the instrument’s terms. When a dispute arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle.
Ortego v. State, Dept. of Transp. & Dev., 96-1322, p. 7 (La.2/25/97), 689 So.2d 1358, 1368-64 (citations omitted).
li>The basis for barring a suit due to a compromise or settlement is res judicata.
[ U]nder La. R.S. 13:4231, as amended in 1990 effective January 1, 1991, res judi-cata bars relitigation of a subject matter arising from the same transaction or occurrence of a previous suit. Thus, the chief inquiry is whether the second action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the first action.
Terrebonne Fuel & Lube, Inc. v. Placid Refining Company, 95-654, 95-671, p. 12 (La.1/16/96), 666 So.2d 624, 632.
Given the above, I cannot find that Holloway intended to compromise its claims against the Inzarella Firm for theft when agreeing to settle a dispute over billing fees for accounting services rendered. Further, I cannot find that the subject of the compromise or settlement arises out of the same transaction or occurrence that necessitated that compromise or settlement.
The proposed majority cites language from, State ex rel. Sabine River Auth., 07-214, 07-215 (La.App. 3 Cir. 10/3/07), 967 So.2d 585, to find that Holloway’s claims against the Inzarella Firm are res judica-ta. I authored State ex rel. Sabine River Auth., 967 So.2d 585 and feel a distinction must be made.
In State ex rel. Sabine River Auth., two general contractors were sued by the State for alleged construction defects related to the construction of the Cypress Bend Conference Center. Thereafter, one of those general contractors filed third party demands against its subcontractors. However, prior to the suit by the State, that general contractor had entered into a compromise with two of its subcontractors wherein all disputes related to the construction of the Cypress Bend Conference Center, known and unknown, were compromised, settled, and released.
Thus, in State ex rel. Sabine River Auth., when. the general contractor released the two subcontractors from any future claims, the necessary ^consequences of what it expressed were that further defects in the construction could arise due to the work of those subcontractors and it would be responsible for the results. This result is not absurd, as it is foreseeable by the general contractor that further construction defects may exist. The claims released were causally related to the subsequent claim as they *712 arose out of the same transaction or occurrence, the building of the Cypress Bend Conference Center.
In contrast, here, we have an accounting firm attempting to skirt civil liability from alleged criminal activity due to a compromise over a disputed bill for services rendered. In this situation, there is no foreseeability by Holloway that signing the release would absolve the Inzarella Firm of any .damage due to criminal activity. Certainly, it is absurd to believe that Holloway could suffer the consequence of forgiving the theft of its funds because they settled a dispute related to a bill for services rendered, as the two are not causally related, i.e. they do not arise from the same transaction or occurrence.
Finally, I note that the unfortunate effect of this result is to, at least partially, condone criminal activity. Here, Holloway, an unsuspecting business entity, forgives any and all billing disputes, past, present, and future, with its former accounting firm. It is not unreasonable to suggest that this compromise of a civil dispute envisions civil, as opposed to criminal, activity. The majority opinion shields that accounting firm from civil responsibility for criminal activity that it, theoretically, knew transpired in its dealings with Holloway. In my view, this result runs afoul with public policy considerations, the State’s clean hands doctrine, and the statutory and jurisprudential precedent cited above. Therefore, I respectfully disagree with the proposed majority opinion.